**Mary C. QUARATINO, Plaintiff,**

v.

**TIFFANY & CO., Michael Eiring, and David Wright, Defendants.**

No. 93 Civ. 2099 (JSM).

United States District Court, S.D. New York.

Dec. 18, 1996.

Anne Golden, New York City, for plaintiff.

Louis R. Satriale, Nixon, Hargrave, Devans & Doyle, New York City, for defendants.

## MEMORANDUM OPINION
## AND ORDER

MARTIN, District Judge:

Presently before the Court is plaintiff's application for attorney's fees and costs in the amount of $139,022.68. While the defendant objects to the alleged lack of detail in the time records and to certain specific charges, those objections are without merit, except that the Court will disallow 63.9 hours spent on plaintiff's unsuccessful motion for a new trial on the claim of employment discrimination which the jury rejected. The Court also finds that the rate of $225 per hour is reasonable for an attorney of Ms. Golden's skill and experience.

The principal issue the Court must decide is whether the amount of the time charges should be significantly reduced to reflect the fact that plaintiff was successful on only one of her two claims. The Court agrees with the plaintiff that the two claims were sufficiently related so that the amount of time expended on the successful claim would not have been substantially less if that claim was the only one alleged. Thus counsel's total time charges less the adjustment noted above constitute a fair lodestar for starting an analysis of a reasonable attorney's fee in this case.

The most significant question is what proportion of the lodestar of $124,645.18 should be awarded given that the total judgment recovered by plaintiff was only $158,145. The resolution of this question raises fundamental issues of public policy which have been debated in both the Supreme Court and the Second Circuit. It is far from clear, however, how either of those courts would answer these questions today.

The basic question centers on the extent to which there should be a proportional relation between the amount of the fee and the amount of the plaintiff's recovery. This issue was squarely presented to the Supreme Court in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) in which the Court sustained a fee award of $245,456.25, even though the plaintiffs had received a total award of only $33,-350 in compensatory and punitive damages.

In that case the Court rejected the argument of the petitioners, and the United States as *amicus curiae,* that attorneys' fees in civil rights cases should be analogized to fees in tort cases and should be proportionate to the amount of recovery.

Unfortunately for those seeking guidance from the Supreme Court there was no majority opinion in *Rivera.* The plurality opinion, authored by Justice Brennan, who was joined by Justices Marshall, Blackmun and Stevens, rejected applying the concept of proportionality on the ground that civil rights litigation seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. In a strong dissent, Justice Rehnquist, joined by Chief Justice Burger and Justices White and O'Connor, argued that, in determining whether the time for which the prevailing attorney seeks compensation was reasonably spent, the district court should ask whether a competent attorney would reasonably have spent that amount of billable time on a matter that was likely to result in such a small recovery. Although Justice Rehnquist's dissent suggested that the "billing judgment" approach should control in most cases, it did recognize that there could be exceptions where the defendant's bad-faith conduct significantly increased the cost of litigation, or where the litigation produced substantial benefits for persons other than the plaintiff.

The deciding vote in *Rivera* was cast by Justice Powell, who joined only in the Court's judgment and stated that in his view the plurality had read too narrowly the Court's prior decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) in which the Court said that in determining the amount of the attorney's fees "the most critical factor is the degree of success obtained." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. Justice Powell did, however, reject the rule of proportionality on the ground that "[t]he facts and circumstances of litigation are infinitely variable." *Rivera,* 477 U.S. at 585, 106 S.Ct. at 2700.

In determining not to set aside the factual finding of the district court that the attorney's expenditure of time was reasonable, Justice Powell stated:

Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. In some civil rights cases, however, the court may consider the vindication of constitutional rights in addition to the amount of damages recovered. In this case, for example, the District Court made an explicit finding that the "public interest" had been served by the jury's verdict that the warrantless entry was lawless and unconstitutional. Although the finding of a Fourth Amendment violation hardly can be considered a new constitutional ruling, in the special circumstances of this case, the vindication of the asserted Fourth Amendment right may well have served a public interest, supporting the amount of the fees awarded. As the District Court put it, there were allegations that the police misconduct was 'motivated by a general hostility to the Chicano community in the area. . . .' The record also contained evidence of racial slurs by some of the police. *Rivera,* 477 U.S. at 585–86, 106 S.Ct. at 2700 (citations omitted).

Any continuing authority of the plurality opinion in *Rivera* was cast in serious doubt by the Supreme Court's subsequent opinion in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In that case the plaintiff had recovered only nominal damages but the district court awarded $280,000 in attorneys' fees. The Circuit Court reversed on the ground that a party who received only nominal damages should not be considered the prevailing party. The Supreme Court five person majority, in an opinion written by Justice Thomas, disagreed with the Circuit and held that the plaintiff was the prevailing party, but found that the award of nominal damages was such a limited success that it was reasonable to deny the plaintiff attorneys' fees altogether. Justice Thomas stated:

Once civil rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley v. Eckerhart.* In-

deed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574 (citing *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941).

Justice Thomas concluded:

Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action "must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation'" *Memphis Community School Dist. v. Stachura*, 477 U.S. [299], at 309, 106 S.Ct. [2537], at 2544 [91 L.Ed.2d 249 (1986)] (quoting *Carey v. Piphus*, 435 U.S. 247, 265, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978)) (emphasis and brackets in original). When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, see *Carey, supra*, at 256–257, 264, 98 S.Ct., at 1048–49, 1052, the only reasonable fee is usually no fee at all. In an apparent failure to heed our admonition that fee awards under § 1988 were never intended to "'produce windfalls to attorneys,'" *Riverside v. Rivera*, [citation omitted], the District Court awarded $280,000 in attorney's fees without "consider[ing] the relationship between the extent of success and the amount of the fee award." [citing *Hensley*.] *Farrar*, 506 U.S. at 115–16, 113 S.Ct. at 575.

Although Justices White, Blackmun, Stevens and Souter dissented from that portion of the ruling that denied plaintiff any fee, they did so only on the ground that the issue of what fee, if any, was appropriate for a prevailing party who had recovered only nominal damages should have been remanded to the Circuit Court which had never considered that issue.

If I were deciding the present fee application with only the benefit of the relevant Supreme Court cases, I would conclude that in a case such as this, where the plaintiff sued solely to receive compensation for the damage that she personally suffered, the fee awarded must bear some relation to the amount she recovered. If a party who recovers nominal damages is entitled to a fee of zero because no significant monetary relief was obtained, then a party who receives only a limited recovery should only receive a fee that is reasonable in light of the amount of damages awarded. Indeed, in light of the opinion in *Farrar*, one would assume that a party who brought a civil rights action seeking monetary damages would rarely be entitled to an award that exceeded, or even approached, the amount of the damage award.

Yet, at least twice since the Supreme Court decided *Farrar*, the Second Circuit has sustained fee awards in individual employment discrimination cases that were out of proportion to the amount of the damages recovered. In *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir.1996), the Second Circuit affirmed the award of attorneys' fees of approximately $54,417.28 to a plaintiff in an employment discrimination suit whose total recovery was $69,038.46. In *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134 (2d Cir.1993), the Circuit Court approved the award of $85,304.88 in attorneys' fees to a plaintiff who had been awarded only $38,282.90 in actual damages. In neither of the above cases did the Court mention the Supreme Court's decision in *Farrar* nor discuss the question of the relationship between the amount of the damage award and the amount of the fee.

The Second Circuit did take note of *Farrar* in *Lunday v. City of Albany*, 42 F.3d 131 (2d Cir.1994), a case where a plaintiff who obtained a total award of $35,000 against a police officer on an excessive force claim was awarded a total of $118,912.08 for attorney's fees and expenses. Although noting that *Farrar* provided that the degree of plaintiff's success is the most critical factor in determining reasonableness of a fee award, the Court stated "we consistently have resisted a strict proportionality requirement in civil rights cases. *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522, 525–28 (2d Cir. 1991)." *Lunday*, 42 F.3d at 134–35.

It is worth noting that *Cowan* is a pre-*Farrar* employment discrimination case in which a panel consisting of Judges Kearse, Pratt and McLaughlin reversed a decision of Judge Winter of the Second Circuit, sitting by designation in the District Court for the

District of Connecticut. Judge Winter awarded the plaintiff only $15,000 in damages. His approach to the fee award issue is set forth in the Circuit Court's opinion as follows:

> The court first calculated a "lodestar" award of $54,012.76 for time spent by counsel on those issues on which the plaintiff prevailed. It then proceeded to fix an alternative fee award of $20,000 after holding that *Rivera* constrained the court to consider "both the size of the damage award and the congressional purpose of encouraging the prosecution of meritorious civil rights cases" in determining the final fee award. *Cowan v. Prudential Ins. Co.,* 728 F.Supp. 87, 89 (D.Conn.1990). Finally, it determined a second fee alternative of $6,000 by applying a strict rule of proportionality and taking into account "only the size of the actual damage award". *Id.* The district court entered judgment using the $20,000 alternative fee award. *Cowan,* 935 F.2d at 523–24 (2d Cir.1991).

In an opinion that closely tracked the rationale of the plurality opinion in *Rivera,* the panel reversed and awarded the full amount of the lodestar, $54,012.76. *Cowan,* 935 F.2d at 528. Interestingly, the panel rejected the dichotomy between private damage cases and public interest cases that appeared central to the concurring opinion of Justice Powell in *Rivera,* quoted above. *See Cowan,* 935 F.2d at 527.

Particular note has been taken of the identity of the judges involved in *Cowan* because in the most recent Second Circuit case on this issue, *Pino v. Locascio,* 101 F.3d 235 (2d Cir.1996), a panel of Judges Winter, McLaughlin and Van Graafeiland, overturned an award of $50,590.80 in attorney's fees and costs of $4,842.49 to a plaintiff in an employment discrimination case who had recovered only nominal damages. Judge McLaughlin's opinion for the Court reiterates "[t]he most important factor in determining the reasonableness of a fee award is the degree of success obtained. *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574–75." *Pino,* at 237.

Judge Kearse, the only other member of the *Cowan* panel still on the Circuit Court—Judge Pratt having retired—also was on a panel that, subsequent to *Farrar,* held that a plaintiff in a civil rights case who recovered only nominal damages was not entitled to an award of counsel fees. *Caruso v. Forslund,* 47 F.3d 27, 32 (2d Cir.1995). Thus, there is reason to doubt that the Circuit Judges involved in *Cowan* would consider that case as good law today.

■ The above analysis suggests that it is far from clear how the Circuit Court would resolve the fee question presented here. In part, the current lack of clarity on the issues stems from the fact that on the issue of the reasonableness of a fee award the appellate courts give substantial deference to the discretion of the district judge. *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992). While I would not change that rule, this appears to be an area where the district courts need guidance with respect to the factors that should be considered in exercising that discretion.

Given the uncertain state of the current law, I will follow the procedure adopted by Judge Winter in *Cowan* and calculate alternative fee awards, with the hope that a remand can be avoided should the Circuit Court disagree with the approach I adopt.

If *Cowan* and *Lunday* still represent the law of this Circuit, then it is appropriate to award the plaintiff the full amount of the lodestar, $124,645.18. The plaintiff prevailed on a substantial claim and, as already noted, the total amount of time expended would not have been reduced substantially had plaintiff pursued only the retaliation charge.

I will not award this amount, however, because the rationale of *Cowan* and *Lunday* appears inconsistent with *Farrar,* and with the views of at least five of the Justices who decided *Rivera,* as well as the recent decisions of the Second Circuit in *Pino v. Locascio,* and *Caruso v. Forslund.*

■ It seems most likely that, when squarely faced with this issue, the appellate courts will adopt the "billing judgment" approach suggested in *Rivera* by Chief Justice Rehnquist. This approach focuses on the judgment an attorney would exercise in determining the amount of time that should be

devoted to a case in light of the anticipated recovery. While that approach would place heavy emphasis on the amount of the potential recovery in cases where the action was brought solely to recover damages sustained by an individual, it is flexible enough to provide reasonable guidance in the "infinitely variable" facts and circumstances alluded to by Justice Powell in *Rivera.* 477 U.S. at 585, 106 S.Ct. at 2700.

For example, in a case where a new legal principle of importance in the field of civil rights is involved, the appropriate billing judgment might be that of a public interest institution, such as the American Civil Liberties Union, and the question would be how much of the time of its lawyers would such an institution reasonably commit to a case brought to establish that principle. Public service institutions are always faced with the question of how much of their limited resources they can commit to a particular issue. In addition, the willingness of a private attorney to commit her time to a case where little monetary recovery may be expected may itself reflect a reasonable billing judgment that the issues presented are of overarching societal importance. The question whether the establishment of a particular rule of law is important enough to justify a substantial commitment of lawyers' time is one which the district courts are well-qualified to decide. *See Cabrera v. Jakabovitz,* 24 F.3d 372, 393 (2d Cir.1994).

In cases such as the present, the issue will be much more straight forward—what is a reasonable amount of time for a lawyer to spend at a given hourly rate in order to obtain the monetary award that one could reasonably anticipate.

 Despite some dicta to the contrary in both Supreme Court and Circuit Court opinions, see, e.g., *Rivera,* 477 U.S. at 585, 106 S.Ct. at 2700; *Hetzel v. County of Prince William,* 89 F.3d 169, 173 (4th Cir.1996); *Corder v. Brown,* 25 F.3d 833, 837 (9th Cir. 1994), I do not believe that in resolving the reasonableness of the fee award any weight should be given to the amount demanded in the complaint. Trial judges and lawyers are well aware that it is not uncommon for a complaint to contain an *ad damnum* clause that asks for an amount of damages well in excess of the amount that counsel might reasonably expect to recover. However, in the course of discovery and at trial, a plaintiff will have to present damage calculations that can serve as a starting point to determine what amount of damages the plaintiff could reasonably hope to recover.

A rational billing judgment would attempt to weigh the likely amount of any recovery against the risk of litigation. As Justice Rehnquist noted in *Rivera,* no rational lawyer would devote $25,000 of billable time to a matter where the potential recovery was only $10,000. *See* 477 U.S. at 592–93, 106 S.Ct. at 2703. Indeed, except in exceptional circumstances, no rational lawyer or client would commit to any case an amount for lawyer's fees that approaches the amount of the total recovery.

A client hiring a lawyer does so with the hope that he will get more out of the lawsuit than will the lawyer. Obviously as the probability of success increases, so might the willingness of a client to commit funds for *necessary* attorney's fees. But necessary is a key word.

An honorable lawyer must constantly ask, "Is the amount of my charge for this particular piece of trial preparation justified in light of the contribution it will make to the likelihood of a recovery of a particular amount?" Every lawyer recognizes that it may be reasonable to do certain things to enforce a note for $1,000,000 that would not be appropriate in an attempt to collect a $10,000 note.

The use of a "billing judgment" approach in awarding attorney's fees should have the salutary effect of encouraging lawyers in cases such as this to limit pretrial discovery to that which is reasonable in light of the expected recovery. This Court has seen too many cases in which attorneys engage in excessive discovery in the apparent hope that if liability is established they will be compensated for the total time expended even though the resulting fee award is out of all proportion to the amount of the damages recovered.

In awarding fees on the "billing judgment" basis, it must be recognized that in some

cases it is difficult for attorneys and clients to predict, at the outset, how much billable time it will take to obtain a particular result. In such circumstances, clients are often unwilling to make an open-ended commitment to fund the total costs of the litigation. The result may be a totally contingent fee arrangement or a retainer that provides a cap on the time charges and some contingent share by the lawyer in the recovery by plaintiff. Each of these varied situations involves a billing judgment with which the courts are familiar and which the courts can apply in determining a reasonable fee for a prevailing party in litigation such as this.

 Turning to the facts of this case, it appears that a reasonable billing judgment would have placed a limit on the willingness of plaintiff to make an open-ended funding commitment to this case. First, a large compensatory damage award for lost wages could not have been anticipated. Plaintiff remained in defendant's employ throughout the period of the lawsuit and thus her damages were limited to the difference between the amount she was being paid and the higher rate of pay for the job she claimed she should have had. Plaintiff's damage expert—with the usual generosity one might anticipate from the plaintiff's expert—estimated the total damages for lost wages from 1992 to 1998 as $73,108. Although plaintiff had a claim for emotional distress and punitive damages, neither was so strong as to provide a reasonable expectation of a substantial award. A very generous evaluation of the case would have placed the maximum possible recovery at no more than $200,000. But then counsel and client would have had to factor in the risk that there might be no recovery at all—a substantial risk in this case. In these circumstances it appears that one of a number of reasonable billing judgments that an attorney and client would make is the one that, in fact, plaintiff and her attorney did make, i.e., an agreement that plaintiff's time charges would be capped at 50% of the recovery.[1]

While the percentage recovery is higher than one would expect in a typical tort case, it is not unreasonable in a case where the parties reasonably anticipate a relatively low recovery. Of course, the courts should be alert to the possibility that attorney and client might structure their retainer agreement with an eye to securing the maximum possible award of attorney's fees', but there is nothing to suggest that the 50% provision was adopted for that purpose in this case.

Thus, the Court concludes that in this case it is reasonable to award counsel fees equal to 50% of the total recovery, to wit, $79,072.50.

**SO ORDERED.**

---

1. Since the "billing judgment" rule attempts to project what a lawyer retained in a typical case would charge when there was no provision for prevailing attorney's fees, it would be inappropriate to calculate the 50% by adding the attorney's fees to the amount of the recovery as does the retainer agreement between this plaintiff and her lawyer.