Mary C. **QUARATINO,** Plaintiff–
Appellant,

v.

**TIFFANY & CO.,** Michael Eiring and
David Wright, Defendants–
Appellees.

No. 476, Docket 97–7096.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1997.

Decided Nov. 14, 1997.

Anne Golden, New York City, for Plaintiff–Appellant.

Daniel A. Rizzi, Nixon, Hargrave, Devans & Doyle, LLP, New York City (Louis R. Satriale, Jr., Frank W. Ryan, of counsel), for Defendants–Appellees.

Leon Friedman, New York City (Herbert Eisenberg, on the brief), for amici curiae New York Civil Liberties Union and National Employment Lawyers Association (New York Chapter).

Daniel F. Kolb, Davis Polk & Wardwell, New York City (William C. Komaroff, Davis Polk & Wardwell; Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, on the brief), for amicus curiae Lawyers' Committee for Civil Rights Under Law.

Before: KEARSE, MINER and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

■ Plaintiff-appellant Mary C. Quaratino appeals an order of the United States District Court for the Southern District of New York (John S. Martin, Jr., *Judge* ) awarding attorney's fees in the amount of $79,072.50, exactly one-half of her recovery at trial on her pregnancy discrimination and retaliation claims against her employer, Tiffany & Co. ("Tiffany"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Perceiving ambiguity in the law of this Circuit regarding the "extent to which there should be a proportional relation between the amount of the fee and the amount of the plaintiff's recovery," the district court decided not to award its calculated lodestar amount,[1] and instead adopted a "billing judgment" approach. *Quaratino v. Tiffany & Co.*, 948 F.Supp. 332, 333, 336–38 (S.D.N.Y. 1996) ("*Quaratino II* "). We decline to adopt

a new fee award approach, and accordingly we vacate the district court's fee award, and remand with directions to award the lodestar attorney's fee, subject to limited recalculation.

I.

The facts of the employment discrimination case underlying this appeal are spelled out in some detail in *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 61–63 (2d Cir.1995) ("*Quaratino I* "). In April 1993, Mary C. Quaratino filed suit in the district court for the Southern District of New York, charging that Tiffany, her employer, had engaged in discrimination in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k),[2] of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[3] She alleged that her discharge from employment in 1992 at the end of her maternity leave constituted unlawful pregnancy discrimination. Less than a month after the March 31, 1994 close of discovery, Quaratino initiated proceedings seeking to amend her complaint to add a claim of retaliation, alleging that in 1993 she was passed over for a promotion at Tiffany's (where she had since been rehired in a lower-level position) in retaliation for her pregnancy discrimination complaint. The district court denied Quaratino's motion to amend her complaint and granted summary judgment on the discrimination claim for Tiffany, but this Court reversed on both counts. *See Quaratino I*, 71 F.3d at 65–66.

In late July and early August of 1996, Quaratino's discrimination and retaliation claims were both tried to a jury, which returned a verdict for Tiffany on the pregnancy discrimination claim, but found for Quaratino on the retaliation claim. The jury awarded her $60,000 in compensatory damages and

---

**1.** The "lodestar" is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) (internal quotation marks and citation omitted).

**2.** This section provides, in pertinent part:
The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affect-

ed by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work. . . .

**3.** Quaratino had earlier (in May 1992) filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which issued a Notice of Right To Sue on January 15, 1993. *See Quaratino I*, 71 F.3d at 63.

$98,145 in punitive damages—a total recovery of $158,145—on the retaliation claim.

Pursuant to Title VII's fee-shifting provision, 42 U.S.C. § 2000e–5(k),[4] Quaratino filed a post-trial motion seeking attorney's fees. The initial application, filed September 13, 1996, sought fees in the amount of $139,022.68. A supplemental application, filed October 25, 1996, sought an additional $14,332.50 for 63.7 hours spent preparing plaintiff's post-trial motions (including the fee applications) and opposing defendant's post-trial motions. Quaratino's attorney's former law firm filed a third application on December 18, 1996 seeking $9,237.78 in unpaid fees. On December 18, 1996, the district court entered an order granting Quaratino's motion for attorney's fees. However, the court declined to award its calculated lodestar amount of $124,645.18, and instead awarded fees in the amount of one-half of the plaintiff's recovery at trial ($79,072.50). See Quaratino II, 948 F.Supp. at 336, 338.

## II.

Quaratino now appeals the fee award. First and foremost, she argues that the district court's use of "proportionality" in setting the fee award is contrary to precedents of the Supreme Court and this Court. She also takes issue with the district court's mathematical calculation of the lodestar amount. We find merit in both arguments, and, accordingly, vacate the judgment and remand the cause for further proceedings consistent with this opinion.

Section 2000e–5(k) specifies that a prevailing plaintiff in civil rights litigation under Title VII is eligible to receive "a reasonable attorney's fee ... as part of the costs." Because Title VII entrusts the awarding of attorney's fees to the discretion of the district court, we will not disturb the court's calculation of reasonable fees absent an abuse of that discretion or an error of law. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir.1997); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992), cert. denied, 506

U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993).

The starting point for the determination of a reasonable fee is the calculation of the lodestar amount. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims. See id. at 433–35, 440, 103 S.Ct. at 1939–40, 1943. Attorney's fees may be awarded for unsuccessful claims as well as successful ones, however, where they are "'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'" Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir.1996) (quoting Dominic v. Consolidated Edison Co. of New York, 822 F.2d 1249, 1259 (2d Cir.1987)) (alteration omitted). The lodestar may be adjusted based on several factors, including in particular the "results obtained," Hensley, 461 U.S. at 434, 103 S.Ct. at 1940. There is, however, a "strong presumption" that the lodestar figure represents a reasonable fee. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d Cir.1997).

### A. Proportionality

The district court began its fee analysis by engaging in just such a lodestar calculation. It specifically found Attorney Golden's rate of $225/hour to be reasonable in light of her skill and experience. The court also explicitly chose not to exclude time spent on Quaratino's unsuccessful pregnancy discrimination claim, finding that it was "sufficiently related" to the successful retaliation claim that "the amount of time expended on the successful claim would not have been substantially less if that claim was the only

---

**4.** 42 U.S.C. § 2000e–5(k) provides, in pertinent part:

In any action or proceeding under [Title VII] the court, in its discretion, may allow the pre-

vailing party, other than the [EEOC] or the United States, a reasonable attorney's fee (including expert fees) as part of the costs....

one alleged." *Quaratino II*, 948 F.Supp. at 333. The court did disallow time spent on Quaratino's unsuccessful motion for a new trial on the discrimination claim, but made no findings of excessive or unnecessary billing. As a result, the district court arrived at a lodestar amount of $124,645.18 [5]—but declined to award it. *See id.* at 336.

Following a thoughtful inquiry into the state of the law and the attributes of a preferred approach to fee awards, Judge Martin instead decided to award attorney's fees of exactly one-half of the plaintiff's $158,145 recovery at trial. Framing the question as "the extent to which there should be a proportional relation between the amount of the fee and the amount of the plaintiff's recovery," he asserted that "it is far from clear how the Circuit Court would resolve the fee question presented here" and frankly requested "guidance" for district courts. *Id.* at 333, 336. Quaratino argues that the relevant precedents of the Supreme Court and our Circuit—including at least one case handed down since Judge Martin's decision—preclude his resort to proportionality. We agree.

In *City of Riverside v. Rivera*, a plurality of the Supreme Court expressly rejected a proportionality requirement for attorney's fee awards in civil rights litigation.[6] 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion). While Justice Powell concurred only in the judgment (upholding the award of $245,456.25 in fees in a case that recovered only $33,350 in damages), he agreed that "[n]either the decisions of this Court nor the legislative history of § 1988 support such a 'rule'" of proportionality between the fee awarded and the damages recovered. *Id.* at 585, 106 S.Ct. at 2699–2700 (Powell, *J.*, concurring). The private enforcement of civil rights claims, the plurality reasoned, vindicates "important civil and constitutional rights that cannot be valued solely in monetary terms" for the benefit of the general public as well as the individual plaintiff. *Id.* at 574, 106 S.Ct. at 2694. Recognizing this, Congress provided for fee-shifting in civil rights cases "specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so." *Id.* at 577, 106 S.Ct. at 2696 (citing legislative history). Tying the attorney's fees to the (usually small) actual damages obtained in a civil rights case would, according to the plurality, frustrate this purpose of the fee-shifting statute. *Id.* at 578, 106 S.Ct. at 2696.

Any uncertainty regarding the authoritativeness of the plurality opinion in *Rivera* was eliminated (in this Circuit at least) when we reaffirmed our own precedents in light of *Rivera*, identifying "the law of this circuit: A presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Cowan v. Prudential Ins. Co.*, 935 F.2d 522, 526 (2d Cir.1991) (discussing *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985) (rejecting lodestar reduction that was based solely on low damage award)).

The district court explicitly acknowledged that "[i]f *Cowan* and *Lunday* [discussed *infra*] still represent the law of this Circuit, then it is appropriate to award the plaintiff the full amount of the lodestar." *Quaratino II*, 948 F.Supp. at 336. The court decided to depart from those precedents, however, because it believed them to be inconsistent with a 1992 Supreme Court case (*Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494), and because of the court's prediction that "[i]t seems most likely that, when squarely faced with this issue, the appellate courts will adopt the 'billing judgment' approach" suggested by the dissenters in *Rivera*. *Quaratino II*, 948 F.Supp. at 336.

---

5. Quaratino challenges the mathematical calculations underlying this particular figure. *See* Part B *infra*.

6. *Rivera*, and the legislative history on which it relied, concerned the fee-shifting provision of 42 U.S.C. § 1988, *see* 477 U.S. at 575–76, 106 S.Ct. at 2694–95, rather than Title VII's § 2000e–5(k), which is at issue here. The Supreme Court has held that the case law, standards, and legislative history of § 1988 are equally relevant to fee determinations under Title VII. *See Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7; *see also Reed*, 95 F.3d at 1183 n. 16 (cases decided under § 1988 "are authoritative in the Title VII context") (internal quotation marks and citation omitted).

Under the "billing judgment" approach, as outlined by the district court, an attorney's requested fee would be judged "reasonable" if it were rationally related to the monetary recovery that the attorney could have anticipated *ex ante*. For example, "no rational lawyer ... would commit to any case an amount for lawyer's fees that approaches the amount of the total recovery." *Id.* at 337. (This, of course, is just what Quaratino's attorney did; she dedicated nearly $150,000 worth of time to a case that ultimately recovered $158,145 for the plaintiff.) The district court would have had Quaratino's attorney estimate *ex ante* the total possible financial recovery in the case (the court forecast a "very generous" maximum of $200,000), discount that amount for the "substantial" risk of no recovery, and proceed to expend time on the case only up to the time value of an appropriate fraction of that expected recovery. *See id.* at 338.

Even setting aside misgivings as to the feasibility of such precise *ex ante* calculations, we find that this approach conflicts with the legislative intent and rationale of the fee-shifting statute. Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation. *See Rivera,* 477 U.S. at 575, 106 S.Ct. at 2695 (plurality opinion) ("Congress did not intend for fees in civil rights cases ... to depend on obtaining substantial monetary relief."). Were we to adopt the "billing judgment" approach that the district court advocates—wherein an attorney would dedicate time to a civil rights case only in proportion to the expected monetary relief[7]—we would contravene that clear legislative intent by relinking the effectiveness of a civil rights plaintiff's legal representation to the dollar value of her claim. As a near-unanimous Supreme Court reiter-

ated in *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," *id.* at 96, 109 S.Ct. at 946 (quoting *Rivera,* 477 U.S. at 574, 106 S.Ct. at 2694), and we are unwilling to hold that the plaintiff's attorney should calculate the value of her client's rights in just those "monetary terms."

Nor is the district court's approach saved by its proposed exception, which would allow fees out of line with monetary recovery in "a case where a new legal principle of importance in the field of civil rights" or an "issue[ ] ... of overarching societal importance" is involved. *Quaratino II,* 948 F.Supp. at 337. Congress enacted fee-shifting statutes to compensate "private attorney[s] general" and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. *See* H.R.Rep. No. 94–1558, at 2 (1976) (citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam)); *see generally* S.Rep. No. 94–1011 (1976), U.S.Code Cong. & Admin.News 1976, 5908.[8] The public interest in private civil rights enforcement is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, *see generally* S.Rep. No. 94–1011, not only to those whose cases make new law.

The district court's novel approach also falters in the face of two legal obstacles: *Farrar* is not controlling here, and this Court has not subsequently acted according to Judge Martin's predictions. In *Farrar,* the

---

**7.** It *is* appropriate to require a civil rights plaintiff's attorney to exercise "billing judgment" in another sense: an attorney should not expend, or at least should not include in a fee application, hours that are "excessive, redundant, or otherwise unnecessary." *See Rivera,* 477 U.S. at 569–70 n. 4, 106 S.Ct. at 2691–92 n. 4 (explaining and quoting *Hensley,* 461 U.S. at 434, 437, 103 S.Ct. 1933, 1941).

**8.** These reports represent the legislative history of 42 U.S.C. § 1988's fee-shifting provision, which has been held to apply equally to 42 U.S.C. § 2000e–5(k), *see supra* note 6. *See also* S.Rep. No. 94–1011, at 4, U.S.Code Cong. & Admin.News 1976, at 5912 (characterizing § 1988 as creating standards for awarding fees intended to be "generally the same as under the fee provisions of the 1964 Civil Rights Act," such as § 2000e–5(k)).

Supreme Court affirmed the denial of attorney's fees to a plaintiff who had technically "prevailed," but who had failed to prove "an essential element of his claim for monetary relief," 506 U.S. at 115, 113 S.Ct. at 575, and so received only a nominal award of $1; this "purely technical or *de minimis*" degree of success, *id.* at 117, 113 S.Ct. at 576, (O'Connor, *J.*, concurring), did not merit attorney's fees. *Id.* at 114–16, 113 S.Ct. at 574–76. *Farrar* can be read as limited to the context where the plaintiff only nominally "wins" at trial—which is just the circumstance in which this Court has since applied it. *See, e.g., Pino v. Locascio*, 101 F.3d 235, 238–39 (2d Cir.1996) (*Farrar* "addressed how this [attorney's fee] inquiry plays out when the plaintiff has won only nominal damages"); *Caruso v. Forslund*, 47 F.3d 27, 31–32 (2d Cir.1995) (applying *Farrar* to uphold denial of attorney's fees where plaintiff obtained no compensatory damages, and secured nominal damages only by moving for them). Before the district court's decision, we had already distinguished between a case in which a plaintiff had "substantial success" and the "mere 'technical victory'" that merited no fee award in *Farrar*. *See Lunday v. City of Albany*, 42 F.3d 131, 135 (2d Cir.1994) (per curiam). Quaratino's success on one of her two claims, obtaining a $158,145 recovery in a case that the district court itself estimated had a maximum possible recovery value of $200,000, is not a "nominal" or "technical" victory—it is a "substantial" success, and thus beyond the scope of *Farrar*.

Furthermore, this Court "has consistently rejected the notion that an award of attorney's fees be proportional to the amount of damages recovered." *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 160 (2d Cir.1992) (pre-*Farrar*), *cert. denied*, 510 U.S. 908, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993); *see also*

Lunday, 42 F.3d at 134–35 (same, post-*Farrar*). We also just recently reaffirmed (albeit in *dicta*) the holdings of *Cowan* and *DiFilippo*, consistent with the *Rivera* plurality, and noted that "a reasonable fee may well exceed the prevailing plaintiff's recovery." *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997); *see, e.g., Bridges v. Eastman Kodak Co.*, 102 F.3d 56 (2d Cir. 1996) (upholding $753,000 fee award in Title VII case recovering $117,000 damages), *cert. denied*, —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134 (2d Cir.1993) (affirming $85,000 fee award on damage award of $38,000), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). The precept that a reasonable attorney's fee may *exceed* the plaintiff's recovery is very different from the approach that Judge Martin predicted would emerge, under which fees that were *less* than, but approached the amount of, plaintiff's recovery would be *un*-reasonable.

Apparently recognizing these weaknesses in the district court's approach, Tiffany puts itself in the awkward position of trying to defend the court's low fee award, but on grounds that differ from, and in fact contradict, the court's own analysis. Tiffany does not press the "billing judgment" rule on appeal. Instead it argues that the $79,000 award should be treated as if it represented a decision by the district court to reduce the lodestar amount for "lack of success" on Quaratino's pregnancy discrimination claim. In particular, Tiffany argues that the district court could have reduced the lodestar to as little as $38,918.96 by excluding all of Quaratino's attorney's time spent on the unsuccessful discrimination claim,[9] and that as a result, the court's actual award of $79,000 does not

9. Tiffany arrives at this figure by excluding all of Quaratino's attorney's time spent prior to the February 1996 amendment of the complaint adding the retaliation claim to the case, and 50% of her time thereafter. This back-of-the-envelope calculation is itself flawed in several respects. First, it conveniently overlooks the fact that Quaratino *sought* to add the retaliation claim to her complaint as early as April of 1994, but was prevented from doing so until 1996 by a (later-reversed) ruling of the district court. *See Quaratino I*, 71 F.3d at 65–66. At the very least,

Quaratino successfully pressed her retaliation claim in the *Quaratino I* appeal and would be eligible for fees for that work even if the claims were severable. Second, the foundation for the retaliation claim apparently was revealed in the 1993–1994 discovery process, suggesting that at least a portion of that time spent in discovery would have to be allocated to the retaliation claim. Fortunately, neither we nor the district court need engage in such hair-splitting, because we affirm the district court's determination that the claims should not be treated as severable.

constitute a reversible abuse of discretion. A lodestar reduction for lack of success is, of course, embraced by *Hensley*, 461 U.S. at 434–35, 103 S.Ct. at 1939–41, and *Farrar*, which stated that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." 506 U.S. at 114, 113 S.Ct. at 574 (internal quotation marks and citation omitted); *see also Pino*, 101 F.3d at 237. Unfortunately for Tiffany, the district court did *not* arrive at its $79,000 award by subtracting the value of time spent on unsuccessful claims from the lodestar. Instead, the court reached that figure by abandoning lodestar analysis altogether in favor of a billing judgment rule. Moreover, Tiffany's argument in support of the court's award depends on the severability of Quaratino's unsuccessful pregnancy discrimination claim from the successful retaliation claim—a characterization that is directly at odds with the court's own explicit finding that the claims were intertwined, *Quaratino II*, 948 F.Supp. at 333, 336. In any event, we decline to engage in any of these hypothetical lodestar calculations and determinations. Instead, we restrict our analysis to the reasoning in fact employed by the district court in reaching its fee award—billing judgment— and, having found it flawed, remand for the award of a fee based on the *actual* lodestar.

\* \* \*

Inasmuch as the district court's abandonment of the lodestar method in favor of a "billing judgment" approach conflicts with the rationale and legislative intent of the civil rights fee-shifting statutes, falls outside the scope of *Farrar*, and is in conflict with this Court's holdings concerning proportionality, we find an error of law requiring vacatur of the district court's attorney's fee award. In light of this holding, as the district court anticipated, "it is appropriate to award the plaintiff the full amount of the lodestar." *Quaratino II*, 948 F.Supp. at 336.

**10.** This seeming "omission" was no doubt occasioned by the fact that the third fee application was filed on the same day as the court's own memorandum opinion and order awarding fees. We leave it to the district court to determine

### B. *Lodestar Calculation*

We appreciate that the district court hoped that, by calculating a lodestar amount based on the requisite discretionary findings, it could avoid a remand in the event that this Court disagreed, as we do, with its alternative "billing judgment" approach. *See id.* Nevertheless, we are obliged to remand for a *limited* recalculation of the lodestar award of attorney's fees. We find no abuse of discretion in, and indeed considerable support for, the district court's findings that (i) the $225/hour rate is reasonable for an attorney of Ms. Golden's skill and experience, (ii) Quaratino's successful and unsuccessful claims were "sufficiently related" so as to make a lodestar reduction based on lack of success on the discrimination claim inappropriate, and (iii) fees should not be awarded for time spent on Quaratino's unsuccessful motion for a new trial. Quaratino should be awarded lodestar attorney's fees based on those findings. We remand, however, for two limited purposes.

First, we invite the district court to revisit certain of the means by which it arrived at its $124,645.18 lodestar figure. Specifically, (i) it appears that the court may have inadvertently double-counted the hours it disallowed for the motion for a new trial, by subtracting that time not from the total fees requested but from the $139,022.68 in fees requested in only the first of three fee applications; (ii) the court disallowed 63.9 hours for Quaratino's attorney's post-trial work, when only 63.7 hours were apparently claimed; (iii) in disallowing all time spent on post-trial motions, the court appears to have disallowed time spent on the fee applications themselves, which time would usually be compensable, *see Reed*, 95 F.3d at 1183–84; and (iv) the court appears not to have addressed the third fee application, from Quaratino's attorney's former law firm.[10]

Second, we direct the court to include in the final award, upon the timely filing of a supplemental application in suit-

whether this application was properly before it, and to exercise its discretion as to whether and to what extent to incorporate this request into the lodestar award.

able form, reasonable attorney's fees for services rendered in the successful prosecution of this appeal.

### III.

Having found an error of law in the district court's use of a "billing judgment" approach to award attorney's fees in proportion to the plaintiff's expected monetary recovery, we vacate the court's final order awarding Quaratino fees in the amount of $79,072.50, and remand with directions to award the lodestar attorney's fee, subject to limited recalculation as outlined above.