UPSTATE NEW YORK BAKERY DRIVERS AND INDUSTRY PENSION FUND, by Kathleen F. SWEENEY as administratrix, Plaintiff,

v.

COLONY LIQUOR DISTRIBUTORS, INC., Defendant.

No. 96–CV–1361 (FJS).

United States District Court, N.D. New York.

Feb. 11, 1998.

**MEMORANDUM-DECISION
AND ORDER**

SCULLIN, District Judge.

### Introduction

Plaintiff, Upstate New York Bakery Drivers and Industry Pension Fund, brings an action against Defendant, Colony Liquor Distributors, Inc., pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1145. In this action, Plaintiff brings one claim under § 515 of ERISA seeking $12,610 in fringe benefit contributions allegedly owed by the Defendant for the period of August 19, 1990 through December 31, 1994. Additionally, the Plaintiff seeks (1) interest on the delinquent contributions equal to 2% per month, (2) liquidated damages equal to the greater of 2% per month or 20% of the entire amount, and (3) costs, fees of collection, and attorney's fees.

Presently before the Court is the Plaintiff's motion for summary judgment on its claim pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant has cross-moved pursuant to Rules 16(f) and 37(b)(2) of the Federal Rules of Civil Procedure to dismiss the complaint, or in the alternative preclude the testimony of Robert E. Kilfoyle.

The Court held oral argument in this matter on July 1, 1997. On that date the Court granted the Plaintiff partial summary judgment, finding that there was no issue of material fact as to the Defendant's liability for delinquent contributions, with the exception of the vacation contributions claimed from the first relevant collective bargaining agreement in effect from August 19, 1990 to December 31, 1991.[1] Accordingly, Plaintiff is entitled judgment in the amount of $10,-494.00 in unpaid contributions, plus statutory interest and liquidated damages. Additionally, for the reasons stated on the record on that date, the Court denied the Defendant's cross-motions. The Court reserved on whether the Plaintiff is entitled to summary

Blitman and King, LLP (Charles C. Spagnoli, of Counsel), Syracuse, NY, for Plaintiff.

Degraff, Foy Law Firm (Glen P. Doherty, of Counsel), Albany, NY, for Defendant.

1. At oral argument the Court found no material issue of fact as the Defendant's liability for delinquent vacation contributions under the second successive collective bargaining agreement covering from January 1, 1992 through 1994.

judgment on the allegedly delinquent contributions owed from several workers' vacation leave taken during the period of time from August 19, 1990 to December 31, 1991. The Court will first address this remaining issue, then address the Plaintiff's application for attorney's fees.

## Background

The Plaintiff fund is a multi-employer and employee benefit plan as defined by ERISA, 29 U.S.C. §§ 1002(3) and (37). At all times relevant to the present action, the Defendant was a party to successive collective bargaining agreements ("CBAs") with the Bakery, Laundry, & Beverage Driver's Local union No. 669. Pursuant to these agreements, the Defendant was required to make contributions on behalf of its classified employees to various employee benefit trust funds. Article XXII of the CBA in dispute specified:

> During the period from January 1, 1989 through December 31, 1990, the Company agrees to pay into Upstate New York Bakery Drivers and Industry Pension Fund the sum of Thirty-four ($34.00) Dollars per week *for each employee in the collective bargaining unit who works three (3) or more days in a given work week.* During the period from January 1, 1991 through December 31, 1991, the Company's contribution to the Industry Pension Fund shall be the sum of Thirty-five ($35.00) Dollars per week for each such employee

(emphasis added). On March 20, 1995, the Plaintiff's agent, Robert E. Kilfoyle, C.P.A., conducted an audit of the Defendant's payroll records and determined, in relevant part, that the Defendant had failed to remit pension contributions for certain employees who were on paid vacation between August 19, 1990 and December 31, 1991. The amount of delinquent contributions for this time period is alleged to be $2,116.

## Discussion

### I. SUMMARY JUDGMENT

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 457, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). To survive a motion for summary judgment the non-movant must do more than present evidence that is merely colorable, conclusory, or speculative. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant must offer evidence that demonstrates that there are issues of fact that must be decided by a fact finder because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

The present dispute centers solely on the interpretation of an Article XXII of the collective bargaining agreement. An employer's duty to contribute rests on the plain meaning of the provisions in the collective bargaining agreement regardless of the subjective intent of the parties. *See Central States Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 861 F.Supp. 1402, 1409 (N.D.Ill.1994) (citing *Central States SE & SW Area Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1149 (7th Cir.1989)). In *Central States,* a district court faced the same issue that is presently before the Court: whether an employer was required to contribute to a union trust fund for vacation days taken by regular employees. *See id.* The CBA in question provided that the employer had to contribute a certain amount for regular employees for each day "worked or compensated." *Id.* The court held that the plain language of the agreement required contribution for vacation days because even though vacations are not days on which regular employees "work," they are days for which regular employee's are "compensated." *Id.*

Plaintiff's contention is that the plain meaning of the CBA at issue requires the Defendant to contribute to the pension fund for full time employees when they are on vacation. Plaintiff argues that the operative part of Article XXII which states "the Company agrees to pay ... Thirty-four ($34.00)

---

Dollars per week *for each employee in the collective bargaining unit who works three (3) or more days in a given work week,"* does not limit contributions from week to week based on the number of days worked that week, but instead intends only to distinguish those part time employees who are entitled to benefits from those who are not. That is, the operative clause merely excludes a group of part time or casual employees from pension contributions. The Plaintiff argues that this was the intent of the parties at the time the collective bargaining agreement was negotiated. Alternatively, the Plaintiff argues that the word "works" should be interpreted as synonymous with "is compensated," arguing that since vacationing employees are accorded full pay while they are on vacation, they should receive pension contributions for those time periods.

For several reasons, the Plaintiff's argument is not persuasive. First, the operative language of Article XXII contradicts the Plaintiff's interpretation. The American Heritage Dictionary defines "given" as "Specified: *a given date."* American Heritage Dictionary 558 (6th ed.1976) (emphasis in original). So Article XXII should be read as limiting the employer's contribution to $34.00 per week "for each employee . . . who works three (3) or more days in a [specified] week." Thus, this limiting language indicates that the employer's contribution was conditional for each employee depending on whether an employee worked for three days that week. There is no indication on the face of this provision that this language should only apply to certain types of employees, as the Plaintiff contends.

Second, the language in the following section, Article XXIII, is consistent with this interpretation. Article XXIII, titled "CASUAL EMPLOYEES," specifies that "casual employees shall be entitled to the following fringe benefits only: . . . Pension contributions *providing they work three (3) or more days in a given work week."* Article XXIII plainly contemplates contribution on behalf of casual employees based on the amount of time they work on a week-to-week basis. It is only reasonable to give the same meaning to the identical language in the article proceeding, but apply it to all employees as Article XXII specifies. That is, that pension contribution for all employees is based on a week-to-week determination of the days worked.

Furthermore, the Court is not persuaded by the Plaintiff's alternate argument that the limiting language in Article XXII is at odds with the CBA's guarantee of full pay to vacationing employees. The Court must follow the plain meaning of the CBA to determine the Defendant's contribution liability. Had the drafters of the agreement so intended, they could have just as easily conditioned contribution of benefit payments upon whether an employee was compensated for three or more days in a given week, as in the CBA in *Central States.* They did not, and thus, the Court cannot give the word "work" a meaning contrary to its plain meaning. *See, e.g., Central States,* 861 F.Supp. at 1409 (stating "Although vacations . . . are not days on which regular employees 'worked,' they are days for which regular employees are 'compensated' "). Accordingly, the Court first finds that the meaning of Article XXII is unambiguous and should therefore be decided as a matter of law. *See Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663, 667 (2d Cir.1996). Furthermore, even though the Defendant has not moved for summary judgment, the Court may sua sponte grant summary judgment in the Defendant's favor on this issue because it is a question of law which has been fully briefed and argued by the parties. *See Celotex,* 477 U.S. at 327 (finding that a court can enter "summary judgments" sua sponte as long as the losing party was on notice that she had to come forward with all of her evidence."). Therefore, the Court grants partial summary judgment to the Defendants with respect to the delinquent vacation contributions claimed owing from August 19, 1990 to December 31, 1991.

## II. ATTORNEY'S FEES

Plaintiff seeks $15,481.00 in attorney's fees and $807.79 in costs pursuant to 29 U.S.C. § 1132(g)(2). That section states:

(g) Attorney's fees and costs; awards in actions involving delinquent contributions

. . .

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2) (1985).

■ Since Plaintiff was successful in its suit, it is entitled to attorney's fees pursuant to § 1132(g)(2)(D). Although the Plaintiff was only successful on $10,494 of its claimed $12,610 in delinquent contributions, the Court finds that Plaintiff's successful and unsuccessful claims were so intertwined that the Court need not downwardly adjust Plaintiff's fee request. *See Quaratino v. Tiffany & Co.,* 129 F.3d 702, 705 (2d Cir.1997). How-ever, the Court must still undertake an independent analysis of the reasonableness of the Defendant's fee request using the "lodestar" analysis. *See New York State Teamsters Conference Pension & Retirement Fund v. Empire Airgas, Inc.,* 95–CV–1313, 1996 WL 31172, at*4 (N.D.N.Y.Jan.22, 1996).

■ After reviewing the Plaintiff's fee request, the Court finds time requested is reasonable, and the hourly rates sought are within the appropriate range for the Northern District of New York, with the exception of the Plaintiff's requested paralegal rate. Plaintiff seeks compensation for 33.7 total hours of paralegal time at rates between $70–$86 per hour. The lodestar rate for paralegal work in the Northern District is $50 per hour. *See Boston v. Brown,* 88–CV–1170, 1996 WL 221561, at *4 (N.D.N.Y. Apr.23, 1996); *Newchannels Corp. v. Koplik,* 903 F.Supp. 333, 335 (N.D.N.Y.1995). Therefore, the Plaintiff's request must be reduced by $1143.70. Plaintiff's requested costs are reasonable with the exception of the $52.76 sought for computer research which is not recoverable. *See U.S. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir. 1996). Accordingly, Plaintiff is awarded attorney's fees of $14,337.30 and costs of $755.03.

## Conclusion

After carefully reviewing the parties' submissions, the parties' oral argument, the entire record, and the applicable law, the Court finds that the Plaintiff is entitled to summary judgment on its claims for $10,494 in delinquent contributions. Additionally, the Plaintiff is entitled to statutory interest, liquidated damages and reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g)(2). These amounts are calculated as follows:

*Delinquent Contributions*

| | | |
|---|---|---|
| 1. | General Delinquent Contributions from 1991 to 1994: | $10,039 |
| 2. | Delinquent Vacation Contributions due Aug. 19, 1992: | $ 315 |
| 3. | Delinquent Vacation Contributions due Aug. 19, 1993: | $ 140 |
| | Total | **$10,494.00** |

*Statutory Interest*

1. 2% per month on $10,039 through Jan. 1998:     $12,354.23
2. 2% per month on $315 through Jan. 1998:     $ 408
3. 2% per month on $140 through Jan. 1998:     $ 148.40
             Total               $12,910.63

*Liquidated Damages*

1. 20% of all defaulted contributions ($10,494):     $ 2,098.80

*Attorney's Fees and Costs*

1. Reasonable attorney's fees and costs:     $15,092.33

            ***Total Award***            ***$40,595.76***

---

Therefore, it is hereby

ORDERED that the Plaintiff's motion for summary judgment is GRANTED, in part, as set forth in the decision above, and it is further

ORDERED that the Defendant is GRANTED summary judgment, in part, as set forth in the decision above, and it is further

ORDERED that the Defendant shall pay a total of $40,595.76 in delinquent contributions, statutory interest, liquidated damages, and attorney's fees as set forth above, and it is further

ORDERED that the clerk of the Court shall enter final judgment in this action in such amount.

**IT IS SO ORDERED.**