388 F.3d 1281
 DEMOCRATIC PARTY OF WASHINGTON STATE; Paul Berendt; James Apa; Helen Carlstrom; Vivian Caver; Charlotte Coker; Edward Cote; Ted Highley; Sally Kapphahn; Karen Marchioro; David McDonald; Joseph Nilsson; David Peterson; Margarita Prentice; Karen Price; Marilyn Sayan; John Thompson; Ya-Yue Van, Plaintiffs-Appellants,
Washington State Grange; Terry Hunt; Jane Hodde, Intervenors-Appellees, and
Republican State Committee of Washington, Jeff Kent; Lindsey Echelbarger; Libertarian Party of Washington; Washington State Grange; Terry Hunt; Jane Hodde; Christopher
Vance; Dione Ludlow; John Mills; Freedom Socialist Party; Green Party of Washington; Chris Caputo; Donald Crawford; Erne Lewis, Intervenors,
v.
Sam REED, Secretary of State of the State of Washington, Defendant-Appellee.
Democratic Party of Washington State; Paul Berendt; James Apa; Helen Carlstrom; Vivian Caver; Charlotte Coker; Edward Cote; Ted Highley; Sally Kapphahn; Karen Marchioro; David McDonald; Joseph Nilsson; David Peterson; Margarita Prentice; Karen Price; Marilyn Sayan; John Thompson; Ya-Yue Van, Plaintiffs,
Jeff Kent, Libertarian Party of Washington; Washington State Grange; Terry Hunt; Jane Hodde; Dione Ludlow; John Mills; Freedom Socialist Party; Green Party of Washington; Chris Caputo; Donald Crawford; Erne Lewis, Intervenors, and
Republican State Committee of Washington, Jeff Kent; Lindsey Echelbarger; Libertarian Party of Washington; Washington State Grange; Terry Hunt; Jane Hodde; Christopher Vance; Dione Ludlow; John Mills; Freedom Socialist Party; Green Party of Washington; Chris Caputo; Donald Crawford; Erne Lewis; Christopher Vance; Lindsey Echelbarger; Diane Tebelius, Intervenors-Appellants,
Washington State Grange; Terry Hunt; Jane Hodde, Intervenors-Appellees,
v.
Sam Reed, Secretary of State of the State of Washington, Defendant-Appellee.
Democratic Party of Washington State; Paul Berendt; James Apa; Helen Carlstrom; Vivian Caver; Charlotte Coker; Edward Cote; Ted Highley; Sally Kapphahn; Karen Marchioro; David McDonald; Joseph Nilsson; David Peterson; Margarita Prentice; Karen Price; Marilyn Sayan; John Thompson; Ya-Yue Van, Plaintiffs,
Christopher Vance; Republican State Committee of Washington, Jeff Kent; Lindsey Echelbarger; Dione Ludlow; Freedom Socialist Party; Green Party of Washington; Diane Tebelius, Intervenors, and
Libertarian Party of Washington State; John Mills; Chris Caputo; Donald Crawford; Erne Lewis, Intervenors-Appellants,
Washington State Grange; Terry Hunt; Jane Hodde, Intervenors-Appellees,
v.
Sam Reed, Secretary of State of the State of Washington, Defendant-Appellee.
 No. 02-35422.
 No. 02-35424.
 No. 02-35428.
 United States Court of Appeals, Ninth Circuit.
 November 17, 2004.
 
 COPYRIGHT MATERIAL OMITTED David T. McDonald, Preston, Gates & Ellis, LLP, Seattle, WA, for appellants Democratic Party of Washington State, et al.
 John J. White, Livengood, Carter, Tjossem, Fitzgerald & Alskog, Kirkland, WA, for appellants Republican State Committee of Washington, et al.
 Richard Shepard, Shepard Law Office, Tacoma, WA, for appellants Libertarian Party of Washington State, et al.
 James K. Pharris (argued and briefed), Senior Assistant Attorney General, Olympia, WA, and Jeffrey T. Even (briefed), Assistant Attorney General, Olympia, WA, for appellee Sam Reed.
 James M. Johnson, Olympia, WA, for appellees Washington State Grange, et al.
 Before: KLEINFELD, and McKEOWN, Circuit Judges, and BREYER,* District Judge.
 KLEINFELD, Circuit Judge.
 
 
 1
 The Democratic, Republican, and Libertarian Parties prevailed against the Secretary of State of the State of Washington in this civil-rights case. They sued to eliminate Washington's "blanket primary." Each political party objected to the Washington system whereby its own adherents could not choose its nominees, and prevailed on its claim that the Washington system was unconstitutional. The lawsuit was brought under 42 U.S.C. § 1983 and other laws by the Democratic Party, and the other two parties intervened as plaintiffs. This order grants the plaintiffs' motions for attorneys' fees on appeal. It does not involve attorneys' fees for litigation in district court.
 
 
 2
 1. Entitlement to fees.
 
 
 3
 Under our construction of 42 U.S.C. § 1988, a prevailing party in a § 1983 action "should ordinarily recover an attorney's fee unless special circumstances could render such an award unjust."[1] The State of Washington argues that this case falls within the "special circumstances" exception.
 
 
 4
 We have articulated what purports to be a "two-pronged test" for determining when special circumstances exist: (1) whether allowing attorneys' fees would further the purposes of § 1988; and (2) whether the balance of the equities favors or disfavors the denial of fees.[2] This test, like most multi-pronged tests, is highly indeterminate, but there can be no question that the State fails it.
 
 
 5
 The State argues that special circumstances exist because this is not a typical civil-rights case, citing a district court decision, Thorsted v. Gregoire,[3] in support of the proposition that § 1988 fees should not be awarded in an atypical case. In Thorsted, the district court denied a § 1988 award on account of "special circumstances," and we affirmed under an abuse of discretion standard, but noted that "several of the circumstances identified by the district court would be insufficient, standing alone, to warrant a denial of fees."[4] The case at bar is our own fees decision, not a deferential review of a district court decision, and the many factors cited by the district court in Thorsted are largely unique to that case and inapplicable to this one, as well as being, in part, inadequate grounds for the denial of fees.
 
 
 6
 The State is doubtless correct that the case at bar is atypical. Most § 1983 cases are probably prisoners' and arrestees' claims for damages. But this atypicality does not make this case less suitable for an award of attorneys' fees. Section 1988 does not favor people who have been arrested or imprisoned over people who have been denied the political rights they are entitled to under our Constitution. The State also suggests that the political parties probably have more money than typical § 1983 plaintiffs, but there is nothing in the record to show that this is true, nor would it matter if it were. People and entities whose civil rights have been unconstitutionally abridged are generally entitled to attorneys' fees under § 1988 regardless of their ability to pay their attorneys.[5]
 
 
 7
 The State also argues that § 1983 is barely mentioned in the appellants' briefs and was "pled only as a vehicle for this attorney fees request." We cannot make sense of this argument. The way a plaintiff ordinarily makes a claim for relief on account of abridgement of his civil rights in federal court is under the statute that furnishes the cause of action, 42 U.S.C. § 1983. And there is nothing wrong with asserting a civil rights claim under that statute, with the purpose of obtaining attorneys' fees if the claim succeeds.
 
 
 8
 Next, the State argues that the Democratic Party's fee application should be denied because it does not demonstrate that the work done was necessary and has extensive redactions. This argument might appear to have merit had we not looked at the application ourselves, but we have, and it does not. The Democratic Party was an appellant, so its lawyers had to review the record, research the law, draft a brief, read other parties' briefs, consult on how to proceed, and draft a reply brief. Even though its lawyers did not waste our time with a tutorial explanation on what must be done to appeal a case, we know that appellants have to do those things.
 
 
 9
 As for the redactions, they are of this sort: "Counsel call to discuss [REDACTED]" and "Research Supreme Court case law involving [REDACTED]." If the Democratic Party were not furnishing enough information for a court to form a judgment on whether its fees were legitimate, then a court might be obligated to deny them. But these redactions do not impair the ability of the court to judge whether the work was an appropriate basis for fees. The Democratic Party, like any other litigant, is entitled for good reason to considerable secrecy about what went on between client and counsel, and among counsel. For example, the redactions quoted preserve secrecy about something the Democratic Party's lawyers talked about, and some issue of Supreme Court law they researched. One often researches issues that may raise problems for one's claim, or problems affecting the relief one will obtain in district court after prevailing on the argument, and the Democratic Party is entitled to keep this "work product" secret. A lot of necessary research time is spent chasing after ghosts that may lurk in the forests of the U.S. Reports and the Federal Reporters. Any judge who practiced law can tell when the ghost busting is out of hand.
 
 
 10
 2. Excessiveness.
 
 
 11
 The State claims that the fees sought are excessive. Its first argument is that the time spent on research should be allocated to firm overhead because it would ordinarily not be billed to a client. They cite for this surprising proposition a Tenth Circuit case that discusses "reading background cases, civil rights reporters, and other materials designed to familiarize the attorney with this area of law."[6] That is quite a different thing. When lawyers research the law needed to write a brief, they ordinarily bill their clients for the time. There is nothing to suggest that the time billed in this case was for general background rather than preparation of briefs.
 
 
 12
 Next, the State argues that the three plaintiffs' lawyers billed for duplicated services produced by overstaffing, preparing for oral argument by conducting moot courts, having associates attend argument who did not argue, and charging time subsequent to oral argument. The State correctly points out that courts ought to examine with skepticism claims that several lawyers were needed to perform a task,[7] and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do.[8] We have made this skeptical examination, but are unpersuaded that there was needless duplication. A moot court to prepare for argument in a case as important as this one is not unreasonable. Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort. Courts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication. For example, if lawyers merely watch so that they can learn and use their knowledge in subsequent cases, their time should not be billed. But if, for example, they are there because their assistance is or may be needed by the lawyer arguing the case, as when a judge asks "where is that in the record," and one lawyer must frantically flip through pages and find the reference to hand to the lawyer arguing, then the assistance is most definitely necessary. Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later.
 
 
 13
 The Democratic Party, which provided lead counsel, says it used one senior attorney supported by two junior attorneys. Considering the complexity of this case, and its tremendous importance, that seems reasonable. Most devastating to the State's cavil, the State of Washington assigned three senior attorneys to work on the appeal. Either they were wasting the taxpayers' money, which neither they nor we suggest, or the Democratic Party lawyers were not wasting the Party's money. The Republican Party used two lawyers, the Libertarian Party one. We do not see evidence in this case of needless duplication, particularly in light of the comparisons of hours, discussed below. As for the State's objection to any post-argument time, a case does not necessarily stop dead between argument and decision. Lawyers may need to consider subsequent authorities for possible 28(j) letters,[9] respond to inquiries from their clients, prepare for what they will need to do after decision, and so forth.
 
 
 14
 Finally, the State argues that the hours claimed by all three parties are excessive. The Democrats claim 501.1 hours, the Republicans 330.7, and the Libertarians 210. These claims do indeed seem high, based on our own experience in practice doing appeals. But there is one particularly good indicator of how much time is necessary, one which the State tries to use, and that is how much time the other side's lawyers spent. While "[c]omparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party ... does not necessarily indicate whether the hours expended by the party seeking fees were excessive" because numerous factors can cause the prevailing party to have spent more time than the losing party,[10] such a comparison is a useful guide in evaluating the appropriateness of time claimed. If the time claimed by the prevailing party is of a substantially greater magnitude than what the other side spent, that often indicates that too much time is claimed. Litigation has something of the tennis game, something of war, to it; if one side hits the ball, or shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back.
 
 
 15
 The State filed an affidavit that its three lawyers devoted 383.3 hours losing the case. The Democrats spent more, and the Republicans and Libertarians less, winning the case. That suggests that the correct order of magnitude for time spent by their adversaries would be in the low to middle hundreds of hours. Thus, the time spent by the State's lawyers supports rather than undermines the claims by the State's adversaries.
 
 
 16
 The State suggests that we ought to compare the total hours for their adversaries, 1041.8 hours, to their 383.3. Were that the correct comparison, it would indeed suggest excessiveness or needless duplication. But it is not. Though allied in this phase of the litigation, the three parties are more generally engaged in serious conflict in the zero-sum game of attaining political power. There is no reason that one party should simply trust the others to take care of its interests. Even the particular way that this appeal was won might have adversely affected the other parties. Once remedies are worked out, each party will be assiduous in advancing its electoral chances and harming the interests of its adversaries, so they all need to take care of themselves. The Democrats, Republicans, and Libertarians got in bed together in this appeal, partly, as they explain, to avoid the public hostility if only one of them were seen reducing voters' rights to vote for any candidates they liked. But they are not usually amicable bedfellows.
 
 
 17
 3. The intervening defendant.
 
 
 18
 The Washington State Grange argues that, whatever fees may be awarded to the prevailing parties, the Grange should not be liable for any of them. This argument is correct. Though the Grange's arguments doubtless required the plaintiffs' lawyers to spend additional time, that is not enough to allow an award against the Grange. The relief sought by the plaintiffs was abolition of the Washington "blanket primary." The Grange, an intervening defendant, could neither have granted that relief nor denied it.
 
 
 19
 In a Title VII case, Independent Federation of Flight Attendants v. Zipes, the Supreme Court held that attorneys' fees should be awarded against losing intervenors "only where the intervenors' action was frivolous, unreasonable, or without foundation."[11] No reason has been suggested why that holding should not be extended to § 1988 fees. We conclude that § 1988 fee awards should be made against losing intervenors, "only where the intervenors' action was frivolous, unreasonable, or without foundation." Indeed, the Court explicitly noted the similarity to § 1988. Though we rejected its position, the Grange's position was not "frivolous, unreasonable, or without foundation."
 
 Conclusion
 
 20
 We grant judgment in favor of the Democratic Party for $132,313.00, the Republican Party for $66,777.50, and the Libertarian Party for $36,579.00, as attorneys' fees on appeal pursuant to 42 U.S.C. § 1988, against the defendant Secretary of State in his or her official capacity. We do not grant a judgment of fees against the Grange.
 
 
 
 Notes:
 
 
 *
 The Honorable Charles R. Breyer, District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Bauer v. Sampson, 261 F.3d 775, 785 (9th Cir.2001) (quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)) (internal quotations omitted).
 
 
 [2]
 Id. at 785-86.
 
 
 [3]
 Thorsted v. Gregoire, 841 F.Supp. 1068 (W.D.Wash.1994), aff'd subnom. Thorsted v. Munro, 75 F.3d 454 (9th Cir.1996).
 
 
 [4]
 Thorsted, 75 F.3d at 456.
 
 
 [5]
 Sable Comm. of Cal. Inc. v. Pac. Tel. & Tel. Co., 890 F.2d 184, 193 (9th Cir.1989).
 
 
 [6]
 Ramos v. Lamm, 713 F.2d 546, 554 (10th Cir.1983).
 
 
 [7]
 See Pearson v. Fair, 980 F.2d 37, 47 (1st Cir.1992).
 
 
 [8]
 See Ramos, 713 F.2d at 554.
 
 
 [9]
 Fed. R.App. P. 28(j)
 
 
 [10]
 Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1151 (9th Cir.2001) (per curiam).
 
 
 [11]
 Indep. Fed. of Flight Attendants v. Zipes, 491 U.S. 754, 761, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989).