**Mary ROZELL, Plaintiff,**

v.

**Courtney ROSS–HOLST, an individual, Andco, LLC, a corporation, and Neil Pirozzi, an individual, Defendants.**

No. 05 Civ. 2936(JGK)(JCF).

United States District Court,
S.D. New York.

May 29, 2008.

528

Kathleen W. Peratis, Mark Robert Humowiecki, Outten & Golden, LLP, New York, NY, for Plaintiff.

A. Michael Weber, Michael Peter Pappas, Littler Mendelson, P.C. (NY), New York, NY, Elena Paraskevas-Thadani, Littler Mendelson, P.C. (Newark), Newark, NJ, Nancy E. Pritikin, Littler Mendelson, P.C. (CA), San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

The plaintiff, Mary Rozell, brought this employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the

New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq.* She also asserted claims under the Electronic Communications Privacy Act (the "ECPA"), 18 U.S.C. § 2701 *et seq.*, and New York Penal Law § 156.10. Immediately prior to trial, the parties entered into a settlement agreement, resolving all substantive claims but reserving the issue of an award of attorneys' fees for subsequent determination. Ms. Rozell then submitted an application for attorneys' fees, costs, and interest under the applicable sections of Title VII, 42 U.S.C. § 2000e–5(k); the NYCHRL, N.Y.C. Admin. Code § 8–502(f); and the ECPA, 18 U.S.C. § 2707(b)(3). The defendants objected to many aspects of the plaintiff's application.

*Background*

### A. Facts Alleged and the Course of Litigation

Mary Rozell was formerly an employee of Andco, LLC ("Andco"). She was hired to oversee the art collection co-owned by Courtney Ross–Hoist, the principal of Andco, and the Ross Family Foundation. Ms. Rozell contends that Neil Pirozzi, who was her supervisor and the Chief Financial Officer at Andco, repeatedly touched her in a sexual manner against her will and made off-color comments to her. She alleges that when she complained to Ms. Ross–Hoist, Mr. Pirozzi retaliated against her, ultimately terminating her employment. Then, after her attorney sent a letter of complaint to Andco, Mr. Pirozzi purportedly "hacked" into Ms. Rozell's electronic mail account and accessed many of her e-mails, including communications between Ms. Rozell and her attorney.

Following her termination, Ms. Rozell retained the law firm of Outten & Golden LLP, which filed a charge on her behalf with the Equal Employment Opportunity Commission (the "EEOC"). When the EEOC did not issue a determination within 180 days, Ms. Rozell obtained a right-to-sue letter and commenced this action. She asserted claims of sexual harassment and retaliation under Title VII, the NYSHRL, and the NYCHRL. She also alleged that by accessing her e-mail account without authorization, Mr. Pirozzi violated the ECPA and New York Penal Law § 156.10.

The defendants answered the complaint, denying all of the allegations of wrongdoing. In addition, they asserted counterclaims against Ms. Rozell, alleging that she had committed trespass and violated New York Penal Law § 140.05 by allowing unauthorized persons into Ms. Ross–Hoist's apartment to view artwork for which the plaintiff has been responsible.

Highly contentious litigation ensued. The plaintiff filed a motion to dismiss the counterclaims but, after briefing was complete, sought to withdraw the motion. The defendants consented to withdrawal of the motion, but sought an award of costs, including attorneys' fees. The Honorable John G. Koeltl, U.S.D.J., permitted the motion to be withdrawn without prejudice and denied the defendants' application for an award of fees. (Order dated March 3, 2006).

As discovery progressed, disputes between the parties required numerous court conferences and resulted in at least eleven discovery orders. (Memorandum and Order dated Jan. 20, 2006; Memorandum Endorsement dated Jan. 26, 2006; Memorandum Endorsement dated Feb. 24, 2006; Memorandum Endorsement dated March 14, 2006; Memorandum Endorsement dated May 22, 2006; Memorandum Endorsement dated May 30, 2006; Order dated July 19, 2006; Order dated Aug. 8, 2006; Memorandum Endorsement dated Aug. 11, 2006; Memorandum Endorsement dated Sept. 15, 2006; Memorandum Endorsement dated Sept. 26, 2006). In some in-

stances, these discovery orders were the subject of applications for reconsideration or appeals to Judge Koeltl.

At the conclusion of discovery, the parties made cross-motions for summary judgment, each of which Judge Koeltl granted in part and denied in part. (Order dated June 21, 2007). The parties then submitted their joint pretrial order and filed pretrial motions, including motions in limine by both parties and a motion by the defendants to bifurcate the proceedings and try the issue of punitive damages separately. The parties also submitted proposed voir dire questions and requested jury instructions.

In the meantime, the parties met for sporadic settlement discussions, sometimes with my assistance and sometimes on their own. Prior to the scheduled trial date, the defendants made a formal offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, which the plaintiff did not accept. On the eve of trial, however, the parties reached a settlement, the terms of which are confidential. As part of that settlement, they agreed that the plaintiff's claim for attorneys' fees would be submitted to the Court for resolution.

### B. *The Plaintiff's Fee Application*

In their initial application, plaintiff's counsel sought a total of $1,348,877.50 in attorneys' fees and $32,021.83 in costs and disbursements. (Declaration of Kathleen Peratis dated Feb. 8, 2008 ("Peratis 2/8/08 Decl."), ¶ 21 & Exhs. F, G). The following chart shows the breakdown of work performed and hourly rates requested for each attorney and non-professional for whom compensation is sought:

| NAME | STATUS | HOURS | RATE | TOTAL |
| --- | --- | --- | --- | --- |
| Kathleen Peratis | Partner | 802.30 | $675.00 | $541,552.50 |
| Lewis Steel | Of Counsel | 22.30 | $625.00 | $ 13,937.50 |
| Carmelyn P. Malalis | Associate | 122.70 | $375.00 | $ 46,012.50 |
| Mark R. Humowiecki | Associate | 1,388.60 | $375.00 | $520,725.00 |
| Ossai Miazad | Associate | 175.40 | $275.00 | $ 48,235.00 |
| Tara Lai Quinlan | Associate | 33.70 | $275.00 | $ 9,267.50 |
| Delyanne Barros | Law Clerk | 164.00 | $195.00 | $ 31,980.00 |
| Jennifer Liu | Law Clerk | 12.30 | $195.00 | $ 2,398.50 |
| Laureve Blackstone | Law Clerk | 22.50 | $195.00 | $ 4,387.50 |
| Roli M. Khare | Law Clerk | 78.20 | $195.00 | $ 15,249.00 |
| Unknown | File Clerk | 46.90 | $ 80.00 | $ 3,752.00 |
| Faith S. Bekermus | Paralegal | 13.50 | $150.00 | $ 2,025.00 |
| Jennifer Jung | Paralegal | 13.40 | $175.00 | $ 2,345.00 |
| Jamy Rodriguez | Paralegal | 10.20 | $150.00 | $ 1,530.00 |
| James Yu | Paralegal | 38.90 | $150.00 | $ 5,835.00 |
| Kristin Cabildo | Paralegal | 292.70 | $150.00 | $ 43,905.00 |
| Lena Moy Borgen | Paralegal | 32.60 | $150.00 | $ 4,890.00 |
| Marwan Sewail | Paralegal | 15.30 | $150.00 | $ 2,295.00 |
| Michelle Lee | Paralegal | 5.00 | $150.00 | $ 750.00 |
| Olivia J. Quinto | Paralegal | 183.50 | $150.00 | $ 27,525.00 |
| Piel A. Lora | Paralegal | 44.80 | $150.00 | $ 6,720.00 |
| Garrett Kaske | Part–Time Paralegal | 14.70 | $140.00 | $ 2,058.00 |
| Rachel S. Kitson | Paralegal | 10.00 | $150.00 | $ 1,500.00 |
| Susan Zheng | Paralegal | 53.50 | $150.00 | $ 8,025.00 |

| | | | | |
|---|---|---|---|---|
| Unknown | Technical Coordinator | 11.30 | $175.00 | $ 1,977.50 |

(Peratis 2/8/08 Decl., Exh. F).

After the defendants submitted their opposition, plaintiff's counsel revised their application by deleting certain entries, thereby reducing the requested attorneys' fees by $5,668.25 and requested costs and disbursements by $112.00. (Declaration of Kathleen Peratis dated March 28, 2008 ("Peratis 3/28/08 Decl."), Exhs. 13, 14). At the same time, the plaintiff submitted a supplemental request reflecting fees of $85,743.50 and costs of $1,279.91 incurred subsequent to the initial application. (Peratis 3/28/08 Decl., Exhs. 11, 12). The supplemental fee application consists of work performed as follows:

| NAME | STATUS | HOURS | RATE | TOTAL |
|---|---|---|---|---|
| Kathleen Peratis | Partner | 31.50 | $675.00 | $ 21,262.50 |
| Carmelyn P. Malalis | Associate | 15.10 | $375.00 | $ 5,662.50 |
| Mark R. Humowiecki | Associate | 7.30 | $375.00 | $ 2,737.50 |
| Ossai Miazad | Associate | 116.70 | $275.00 | $ 32,092.50 |
| Delyanne Barros | Law Clerk | 12.10 | $195.00 | $ 2,359.50 |
| Ian Silverbrand | Law Clerk | 7.40 | $195.00 | $ 1,443.00 |
| Zaid Hydari | Law Clerk | 9.00 | $195.00 | $ 1,755.00 |
| Garrett Kaske | Part–Time Paralegal | 7.90 | $140.00 | $ 1,106.00 |
| James Yu | Paralegal | 10.20 | $150.00 | $ 1,530.00 |
| Kristen Cabildo | Paralegal | 37.70 | $150.00 | $ 5,655.00 |
| Piel A. Lora | Paralegal | 1.30 | $150.00 | $ 195.00 |
| Olivia J. Quinto | Paralegal | 66.30 | $150.00 | $ 9,945.00 |

(Peratis 3/28/08 Decl., Exh. 11). The plaintiff therefore seeks a total of $1,428,952.75 in fees and $34,275.12 in costs and disbursements. (Peratis 3/28/08 Decl., ¶ 45 & Exh. 13).

The defendants oppose the plaintiff's application on the grounds that (1) the rates sought are unreasonably high; (2) fees for time spent on clerical tasks are not recoverable; (3) fees for time spent on the ECPA claim and the trespass counterclaim should be disallowed; (4) fees for time spent pursuing unreasonable or untimely matters should not be awarded; (5) recovery is precluded for vague time entries; (6) fees for time spent training, conducting a mock trial, learning court rules, and traveling should be disallowed or reduced; (7) the costs for which the plaintiff seeks reimbursement have not been adequately documented; and (8) the plaintiff is not entitled to an award of interest. Furthermore, the defendants contend that any fee award should be subject to an across-the-board reduction because the plaintiff achieved only limited success.

*Discussion*

A. *Legal Framework*

Under Title VII, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of t he costs[.]" 42 U.S.C. § 2000e–5(k). Likewise, under the NYCHRL, "the court ... may award the prevailing party costs and reasonable attorney's fees." N.Y.C. Admin. Code § 8–502(f); *see Desir v. Concourse Rehabilitation & Nursing Center*, No. 06 Civ. 1109, 2008 WL 756156, at *1 (S.D.N.Y. March 21, 2008); *Shannon v. Fireman's Fund*

*Insurance Co.,* 156 F.Supp.2d 279, 298 (S.D.N.Y.2001). A plaintiff is a prevailing party when she "succeed[s] on any significant issue in litigation which achieves some of the benefit" sought in the lawsuit. *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see Bridges v. Eastman Kodak Co.,* 102 F.3d 56, 58 (2d Cir.1996). Success is defined as a change in the legal relationship between the parties that materially benefits the plaintiff. *Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566; *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Bridges,* 102 F.3d at 58. The defendants do not dispute that Ms. Rozell is a prevailing party by virtue of the settlement; indeed, Judge Koeltl determined that to be the case. (Transcript of Proceedings dated Jan. 10, 2008, attached as Exh. B to Peratis 2/8/08 Decl., at 7–8).

 In civil rights cases, including cases brought pursuant to Title VII, determination of a reasonable attorneys' fee has traditionally begun with a calculation of the "lodestar": the number of hours reasonably expended multiplied by the appropriate hourly rate for each attorney or paralegal. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In calculating the lodestar, "the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999). Finally, while the lodestar may be adjusted in light of factors such as the results obtained, *Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933, "[t]here is ... a strong presumption that the lodestar figure represents a reasonable fee." *Quaratino,* 166 F.3d at 425 (internal quotation marks and citation omitted).

 Recently, in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182 (2d Cir.2008), the Second Circuit refined the methodology for calculating statutory attorneys' fees. It abandoned use of the term "lodestar," and stated instead that:

> We think the better course—and the one most consistent with attorney's fees jurisprudence—is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.

*Id.* at 190. These variables include the so-called "*Johnson* factors," first identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). They are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill,* 522 F.3d at 186 n. 3 (citing *Johnson,* 488 F.2d at 717–19). The reasonable hourly rate is "the rate a paying client would be willing to pay." *Id.* at 190. "The district court should then use that

reasonable hourly rate to calculate what can properly be termed the presumptively reasonable fee." *Id.* (internal quotation marks permitted).

The plaintiff's application can now be evaluated in light of these guidelines.[1]

### B. *Compensable Time*

#### 1. *Claims Not Directly Related to Discrimination*

The defendants contend that compensation for the time spent by plaintiff's counsel on the ECPA claim and on the defendants' trespass counterclaim should be disallowed. They are right with respect to the ECPA claim but wrong on the counterclaim.

■■■ The ECPA provides, in part, that a person whose rights under the statute have been violated, "may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). It goes on to state that "[i]n an action under this section, appropriate relief includes ... a reasonable attorney's fee and other litigation costs reasonably incurred." 28 U.S.C. § 2520(b). Unlike Title VII, however, the ECPA is not a "prevailing party" statute. Rather, it equates the availability of a fee award to "appropriate relief" for a "violation," indicating that the predicate for such an award is a judicial finding, or at least an admission, of liability. Since this case was settled without any determination of a violation, fees may not be awarded under the ECPA. *See Specht v. Netscape Communications Corp.,* Nos. 00 Civ. 4871, 00 Civ. 6219, & 00 Civ. 6249, slip op. at 2 (S.D.N.Y. April 20, 2005), *aff'd sub nom. Weindorf v. Netscape Communications Corp.,* 173 Fed.Appx. 44 (2d Cir.2006).

It is therefore appropriate to excise from the fee award any time attributable to the ECPA claim. The defendants estimate that fully one-third of the time that plaintiff's counsel spent on the case was devoted to that issue. (Declaration of A. Michael Weber dated March 14, 2008 ("Weber Decl."), ¶ 33). However, when the plaintiff alleged that Mr. Pirozzi accessed her e-mail account without her permission, she was not only claiming that he violated the ECPA, but also that he retaliated against her in violation of Title VII. Consequently, while work performed in connection with such tasks as researching the legal elements of a claim under the ECPA must be eliminated, time spent taking discovery with respect to the underlying conduct is compensable. Plaintiff's counsel have submitted time entries showing that they devoted approximately 40 hours to exclusively ECPA-related tasks (Peratis 3/28/08 Decl., ¶ 42 & Exh. 10), and I will therefore reduce the total compensable time by that amount.

■■■ Where a counterclaim is asserted in a Title VII or other civil rights case, a prevailing plaintiff may recover attorneys' fees for defending against that counterclaim in two circumstances: where the counterclaim itself is brought pursuant to a fee-shifting statute or where the merits of the counterclaim are closely intertwined with resolution of an affirmative claim for which fees may be awarded. Here, the

---

1. While the Second Circuit held in *Arbor Hill* that all relevant variables should be taken into account in ascertaining a reasonable hourly rate, 522 F.3d at 190, some of those variables, such as "the time and labor required" and "the time limitations imposed by the client or the circumstances," are more logically related to determining the number of hours that should be compensated, and others, such as the extent of success, might be considered either in setting the number of compensable hours or in making a further adjustment after a presumptive fee has been established. In any event, as long as each factor is accounted for, it does not ultimately matter where in the analysis it is applied.

counterclaim of Ms. Ross–Hoist was based on a purported trespass by the plaintiff, a common law claim that would not in itself give rise to an award of attorneys' fees to the prevailing party. *See Shapiro v. City of Glen Cove*, No. CV 03–0280, 2005 WL 1076292, at *26 (E.D.N.Y. May 5, 2005) (awarding fees to prevailing defendant for defense against civil rights claim under 42 U.S.C. § 1983 but not for defense against trespass claim); *Cassata v. New York New England Exchange*, 304 A.D.2d 371, 371, 756 N.Y.S.2d 845, 845 (1st Dep't 2003) (holding that plaintiff was not entitled to append demand for attorneys' fees to trespass claim). However, the trespass counterclaim here was closely related to Ms. Rozell's discrimination claim. To the extent that the defendants could demonstrate that the plaintiff would have been fired for the conduct that constituted trespass, this after-acquired evidence could have rendered her ineligible for reinstatement or front pay and could have limited her claim for back pay to the period from her termination until the trespass was discovered. *See McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 361–62, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Any work done regarding the factual basis for the trespass claim was thus of equal value in connection with the discrimination claims and is compensable. Furthermore, any work performed by plaintiff's counsel regarding the legal aspects of the trespass claim appears to have been de minimis. No reduction of fees is therefore warranted in connection with the this claim.

### 2. *Matters Unreasonably Pursued*

■ The defendants next argue that plaintiff's counsel should not be compensated for time spent pursuing claims or taking positions that were unreasonable, unsuccessful, or untimely. Indeed, counsel may be denied compensation for work done on motions that were never filed, *see Divane v. Mitchell Security Systems, Inc.*,

No. 07 C 0567, 2008 WL 938381, at *2 (N.D.Ill. April 7, 2008); *Pascuiti v. New York Yankees*, 108 F.Supp.2d 258, 268 (S.D.N.Y.2000), on claims that were abandoned, *see Cooper v. Sunshine Recoveries, Inc.*, No. 00 Civ. 8898, 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001) (denying compensation for class claims never pursued), on motions that were unreasonable or had little chance of success, *see Reiter v. Metropolitan Transportation Authority of New York*, No. 01 Civ. 2762, 2007 WL 2775144, at *10–12 (S.D.N.Y. Sept. 25, 2007), and on submissions that failed to comply with court orders, *see Marisol A. ex rel. Forbes v. Giuliani*, 111 F.Supp.2d 381, 394 (S.D.N.Y.2000) (denying fees for untimely expert report).

On the other hand, a court should not disallow fees for every motion that a prevailing party did not win. Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments.

■ In this case, several of the tasks performed by plaintiff's counsel were unjustified. For example, the plaintiff moved to dismiss Ms. Ross–Hoist's counterclaim for trespass but then withdrew the motion. Plaintiff's counsel themselves thus recognized the futility of their application. It also does not appear that the work done on this motion contributed appreciably to the plaintiff's subsequent motion for summary judgment. The defendants estimate that plaintiff's counsel billed 97.5 hours for work done in connection with this motion and related activities. (Weber Decl., ¶ 36 & Exh. 2). However, this figure includes discovery in connection with the trespass claim, which is relevant to the after-acquired evidence defense, and the defendants elsewhere calculate that plaintiff's counsel spent about 50 hours on the mo-

tion to dismiss alone. (Weber Decl., ¶¶ 9, 34). The plaintiff has not contested this figure, and it appears to be supported by the time records. Therefore, the compensable hours shall be reduced by that amount.

A reduction is also warranted for the time spent on a reply memorandum that was not accepted because it was filed in contravention of Judge Koeltl's directive. (Memorandum Endorsement dated September 19, 2007). Although plaintiff's counsel argue that the same work would have gone into preparing for oral argument, I find this unlikely. The defendants estimate that 21 hours were devoted to work on the reply (Weber Decl., ¶ 42 & Exh. 19), and that amount shall be deducted from the compensable hours.

By contrast, the defendants complain about a number of other motions and activities that, while unsuccessful, were part of the routine give and take of litigation. For example, while the plaintiff did not prevail on her motion for summary judgment on the trespass counterclaim because there remained contested issues of fact (Weber Decl., ¶ 37), this was the type of dispositive motion often made—usually by defendants—following the completion of discovery, and it was hardly unreasonable. Similarly, it was appropriate for plaintiff's counsel to seek to file a late answer to the counterclaim (Weber Decl., ¶ 44) and to seek to assert a cause of action for retaliation based on that counterclaim (Weber Decl., ¶ 45). So, too, was it reasonable for counsel to explore the possibility of sanctions when they identified what they believed to be a factual contradiction in Ms. Ross–Hoist's testimony. (Weber Decl., ¶ 38). Finally, the parties each filed motions concerning a host of discovery and evidentiary disputes, and the fact that the plaintiff was unsuccessful on some of them (Weber Decl., ¶¶ 39, 40, 41, 43, 46, 47, 49)

does not disqualify her counsel from compensation for the work done.

 The defendants further object that the proceedings were multiplied by the contentiousness of plaintiffs' counsel. There is some merit to this argument. Plaintiffs' counsel responded to the rescheduling of a deposition due to the illness of the witness by demanding a court-ordered deposition schedule for all of the defendants' witnesses (Weber Decl., ¶ 51; 2/24/06 Order); they refused to consent to an adjournment of the trial to accommodate the pregnancies and medical conditions of a witness and one of defendants' counsel (Weber Decl., ¶ 51 & Exh. 21); and they gratuitously declined to consent to a motion to admit one of defendants' counsel *pro hac vice,* apparently on the ground that the attorney had been subject to discovery sanctions in another jurisdiction. (Peratis 3/28/08 Decl., ¶ 9). To be sure, defendants' counsel also bear some responsibility for the level of rancor in this case, but they are not the ones seeking an award of attorneys' fees. Since the occasional uncooperativeness of plaintiff's counsel caused the parties to expend unnecessary effort litigating minor issues, I will reduce the compensable time by an additional 50 hours.

### 3. *Non–Compensable Matters*

Next, the defendants contend that plaintiff's counsel should not be compensated for time spent in training and participating in a mock trial, and should be compensated at half their regular hourly rates for time spent traveling. (Weber Decl., ¶ 57 & Exh. 23). Training costs are customarily incorporated in a firm's overhead, and plaintiff's counsel have not demonstrated that they generally bill their clients for such expenses. Therefore, seven hours of Mr. Humowiecki's time shall be excluded to account for the time he spent receiving

instruction in trial practice. (Weber Decl., Exh. 23).

■ It is entirely proper, however, to bill a client for a mock trial exercise devoted to the case at hand. Just as preparation for oral argument frequently involves a moot court, *see Democratic Party of Washington State v. Reed,* 388 F.3d 1281, 1286–87 (9th Cir.2004), so may preparation for an evidentiary presentation appropriately include a mock trial. *See BD v. DeBuono,* 177 F.Supp.2d 201, 204 (S.D.N.Y.2001); *but see O'Sullivan v. City of Chicago,* 484 F.Supp.2d 829, 836–37 (N.D.Ill.2007) (denying fees for mock trial as excessive). Indeed, this technique has the added benefit of previewing a case for a mock jury, and the jury's reaction may influence a party's willingness to settle. Consequently, no reduction shall be made for time spent on the mock trial.

■ The defendants are correct that travel time is appropriately compensated at half of counsel's normal billing rate. *See Colbert v. Furumoto Realty, Inc.,* 144 F.Supp.2d 251, 261 (S.D.N.Y.2001). However, in their reply papers, plaintiff's counsel adjusted their fee application accordingly. (Peratis 3/28/08 Decl., ¶ 26 & Exh. 8). Therefore, no further reduction is warranted.

#### 4. *Specificity of Time Entries*

■ The defendants contend that the compensable time should be reduced because many of the time entries of plaintiff's counsel are vague. Indeed, entries lacking sufficient detail "cannot be evaluated for reasonableness and therefore cannot be compensated." *Ursa Minor Ltd. v. Aon Financial Products, Inc.,* No. 00 Cv. 2474, 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001). Accordingly, a court may reduce a fee award because of "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 173 (2d Cir.

1998). Here, the defendants identify about 70 hours of work for which plaintiff's counsel have not indicated the subject matter of a conference, communication, or document review. (Weber Decl., ¶ 53 & Exh. 22). However, when viewed in the context of other work performed around the same time, the ambiguity of many of the challenged entries disappears. For example, the entries for a conference between Ms. Peratis and Mr. Humowiecki on October 12, 2004, like all of the surrounding entries, plainly relate to preparation for mediation with the EEOC. (Peratis 2/8/08 Decl., Exh. E). While some entries remain opaque, they are de minimis and do not warrant any reduction in the total compensable hours.

#### 5. *Clerical Tasks*

■ Under fee-shifting statutes, attorneys may not be compensated at their regular hourly rates for time spent performing clerical tasks. Rather, they should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all. *See Cowan v. Ernest Codelia, P.C.,* No. 98 Civ. 5548, 2001 WL 30501, at *9 (S.D.N.Y. Jan. 12, 2001) (applying $50/hour rate); *Pascuiti,* 108 F.Supp.2d at 267 (same); *Lawson ex rel. Torres v. City of New York,* No. 99 Civ. 10393, 2000 WL 1617014, at *2–3 (S.D.N.Y. Oct. 27, 2000) (same). Here, the defendants contend that plaintiff's counsel and paralegals devoted more than 600 hours to clerical tasks. (Weber Decl., ¶ 31 & Exh. 6).

■ The work performed by counsel, however, appears to have consisted primarily of compensable tasks such as the selection and redaction of trial exhibits and the supervision of paralegals who were engaged in the physical preparation of documents. Likewise, paralegals engaged in

compensable activities, including collating and labeling trial exhibits and preparing witness binders. Moreover, plaintiff's counsel have deleted from their final fee application 33.5 hours of paralegal time devoted to clerical tasks, such as velobinding, organizing case files, and preparing documents for mailing. (Peratis 3/28/08 Decl., ¶ 25 & Exh. 14). No further reduction is necessary.

### 6. *Staffing and Use of Time*

■■■■ The defendants argue for an across-the-board reduction of any award on the grounds that plaintiff's counsel overstaffed the case and spent an excessive number of hours on virtually every phase. (Weber Decl., ¶¶ 7–23 & Exh. 1–12). The defendants' concerns are to some extent exaggerated. For instance, while two of plaintiff's attorneys attended a number of proceedings, these tended to be the most critical points in the litigation, such as the depositions of key witnesses, where it was entirely appropriate to staff in this manner. Furthermore, the apparently excessive time spent by plaintiff's counsel on some tasks was often the result of the aggressiveness with which defendants' counsel litigated the case. The defendants, for example, filed 15 different motions in limine, and plaintiff's counsel can hardly be faulted for taking the time that was necessary to respond to these motions.

Nevertheless, the time spent by plaintiff's counsel was in other instances excessive and therefore must be reduced. *See Hensley*, 461 U.S. at 433–35, 103 S.Ct. 1933; *Quaratino*, 166 F.3d at 425. More than 363 hours, for example, were spent on conferences between plaintiffs' counsel. (Weber Decl., ¶ 11 & Exh. 4). Another 80 hours were devoted to preparing proposed jury instructions and a verdict form (Weber Decl., ¶ 15 & Exh. 8), despite the fact that counsel were experienced in employment discrimination cases and presumably would have had a substantial bank of sample jury charges to draw on. Furthermore, a disproportionate amount of time was billed by the more senior counsel—Ms. Peratis and Mr. Humowiecki—relative to that billed by more junior associates with lower hourly rates.

■■■ In this instance, it would not be practical to identify specific time entries that should be eliminated. Fortunately, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Rather, ... a court may use a percentage reduction " 'as a practical means of trimming fat from a fee application.' " *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir.2006) (quoting *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). *Reiter*, 2007 WL 2775144, at *13. Here, it is appropriate to impose a reduction of fifteen percent to the hours submitted by plaintiff's counsel, to be applied after the specific reductions itemized above have been made. With respect to certain entries, such as conferences among plaintiff's counsel, this percentage likely understates the excess. In other areas, such as time devoted to the summary judgment motion, this may be too drastic a reduction. On balance, however, it fairly reflects the extent to which plaintiff's counsel devoted more time than was reasonably necessary to the litigation.

### 7. *Partial Success*

Finally, the defendants argue for a percentage reduction based on what they characterize as the plaintiff's limited success. They contend that (1) what Ms.

Rozell achieved in settlement was only a fraction of what she had demanded and what she expected to obtain through the litigation; (2) a number of the plaintiff's claims were dismissed outright prior to trial; (3) the plaintiff could have obtained a similar result by settling at an earlier stage in the case, thus avoiding additional attorneys' fees; and (4) as part of the settlement, Ms. Rozell surrendered literary rights of potentially great value (Weber Decl., ¶¶ 55–56; Def. Memo. at 33–34).

A fee award may indeed be reduced to reflect partial success by a prevailing plaintiff.

> Once civil rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. *Garland,* 489 U.S. at 793, 109 S.Ct. 1486. Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933.

*Farrar,* 506 U.S. at 114, 113 S.Ct. 566. The Second Circuit has made clear that any such reduction must be based on the extent to which the plaintiff failed to achieve success, and not on any disproportion between the fees requested and the plaintiff's financial stake in the litigation. *See Kassim v. City of Schenectady,* 415 F.3d 246, 252 (2d Cir.2005); *Quaratino,* 166 F.3d at 425–26.

In this case, Ms. Rozell was highly successful. Without breaching the parties' confidentiality agreement, her monetary recovery can be fairly characterized as substantial. To be sure, it was less than bargaining positions she had taken earlier in settlement talks, but a party's posturing during negotiations can hardly be taken as a fair measure of what would constitute a successful outcome.

The defendants are correct that the plaintiff did not obtain certain categories of relief sought in her complaint and that certain causes of action were abandoned or dismissed. However, relief should not necessarily be viewed so categorically. In an employment discrimination case, for example, front pay is a substitute for reinstatement. Therefore, it would not be appropriate to reduce a fee award merely because a plaintiff sought reinstatement in her complaint but ultimately received only a monetary recovery. Similarly, although certain claims fell by the wayside during the course of the litigation, this does not warrant a fee reduction based on limited success because the claims would not have entitled the plaintiff to any additional remedies. A plaintiff may still be viewed as having "obtained a significant and valuable level of success" even if she did not achieve the precise result originally sought. *Marisol A.,* 111 F.Supp.2d at 398.

Nor is it appropriate to reduce the lodestar on the grounds that the plaintiff might have settled earlier and still obtained a substantial recovery at that time. As the defendants note, prior to the final settlement, Ms. Rozell declined the defendants' Rule 68 offer of judgment. But relying on that offer, or indeed on any other settlement offer, as a basis for reducing a fee award would undermine the value of the Rule 68 mechanism. Rule 68 creates an incentive for a plaintiff to accept a formal offer by penalizing the plaintiff who rejects it but later recovers less at trial: that plaintiff is foreclosed from recovering costs incurred after the point at which she rejected the offer. Where, as here, a fee-shifting statute is involved, the award of attorneys' fees would likewise be limited to those incurred prior to the plaintiff's rejection of the Rule 68 offer. *See Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct.

3012, 87 L.Ed.2d 1 (1985); *Wilson v. Nomura Securities International, Inc.,* 361 F.3d 86, 89 (2d Cir.2004). For Rule 68 to work, the defendant must offer a high enough settlement to tempt the plaintiff to accept. But a defendant's calculus will change if it is able to "low-ball" a Rule 68 offer of judgment while retaining the option to argue later that the offer was nonetheless "substantial" and that the plaintiff's fee entitlement should be reduced accordingly. Therefore, apart from the operation of Rule 68 itself, the parties' positions during settlement should have no bearing on the Court's assessment of the degree of success or any other element of the fee award that the plaintiff may be entitled to.

■ Finally, the defendants argue that, as part of the settlement, the plaintiff gave up valuable literary rights and that this diminishes the extent of her success in the litigation. There may be circumstances where the surrender of rights in settlement can lead to a reduction in fees. For example, if an employee who is otherwise entitled to continue in her job agrees to resign, this should be considered in evaluating the degree of her success. *See Spencer v. Wal–Mart Stores, Inc.,* 469 F.3d 311, 318–19 (3d Cir.2006). It is less obvious that giving up a right not directly related to employment has any bearing on the extent to which resolution of an employment discrimination case is considered successful. That issue need not be decided here, however, because the "value" of Ms. Rozell's literary rights is entirely speculative. There is no evidence that the plaintiff had any record of publishing or that she had any concrete plans to do so.

Accordingly, no reduction is warranted based on the degree of success obtained by the plaintiff.

### 8. *Calculation of Hours*

For purposes of reducing the compensable hours based on the determinations above, it is practical to group some of the attorneys and paraprofessionals, since there is a range of billing rates. Lewis Steel, who performed services of counsel, billed at a rate close to Ms. Peratis', and his time may be combined with hers. By contrast, senior associates billed at a rate that was $100 more per hour than junior associates, and the hours of these two classes should therefore be separated. Law clerks are a fourth grouping. Finally, although a file clerk, technical coordinator, and paralegals billed at different rates, the file clerk and technical coordinator's hours were minimal and shall be included with the paralegals. Combining the initial and supplemental fee applications and incorporating the adjustments made by plaintiffs' counsel, the hours for which they seek compensation and the respective percentage for each grouping are as follows:

| Partners | Sr. Assoc. | Jr. Assoc. | Law Clerks | Paralegals |
|---|---|---|---|---|
| 856.07 | 1,532.50 | 325.80 | 305.50 | 876.20 |
| 22% | 39% | 8% | 8% | 22% |

The required reductions may now be applied to these figures. First, the seven hours spent on training will be deducted directly from Mr. Humowiecki's time. Next, a total of 161 hours shall be subtracted across the board: 40 hours for work on the ECPA claim, 50 hours for work on the motion to dismiss the trespass counterclaim, 21 hours for the reply memorandum that was stricken, and 50 hours for unnecessary work generated by counsel's uncooperativeness. These hours will be deducted proportionally from each of the categories of service providers, resulting in the following allocation:

| Partners | Sr. Assoc. | Jr. Assoc. | Law Clerks | Paralegals |
|---|---|---|---|---|
| 820.65 | 1,462.71 | 312.92 | 292.62 | 840.78 |

Applying the 15% reduction for overstaffing and excessive expenditure of time, the final tally becomes:

| Partners | Sr. Assoc. | Jr. Assoc. | Law Clerks | Paralegals |
| --- | --- | --- | --- | --- |
| 697.55 | 1,243.30 | 265.98 | 248.73 | 714.66 |

It is to these figures that reasonable hourly rates shall be applied.

## C. *Hourly Rates*

 "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The "community" is presumed to be the district in which the case is litigated, absent unusual circumstances. *See Arbor Hill*, 522 F.3d at 191. As noted above, the Second Circuit has identified the touchstone inquiry as "what a reasonable, paying client would be willing to pay." *Id.* at 184. Further, it has recognized "the Supreme Court's emphasis on the need to use the approximate market rate for an attorney's services in calculating the presumptively reasonable fee." *Id.* at 192 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). At the same time, the Circuit has instructed that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 184. These guidelines leave open several issues. First, there may be a range of rates that different counsel command in the marketplace for essentially the same services. It is not clear whether *Arbor Hill* is suggesting that the rate actually charged by the attorney seeking compensation should be awarded as long as it falls within that range and is therefore consistent with the market, or whether the district court is required to choose a lower rate within the range in order to impose "discipline." Second, there are varying interpretations of what it takes to litigate a case "effectively." A court might conclude in hindsight that a client's choice of counsel was profligate and that less expensive counsel would have done as well. On the other hand, considerations of risk might dictate that a paying client choosing better qualified and more expensive counsel at the outset of a case in order to optimize the likelihood of a favorable outcome.

 These theoretical issues need not be resolved now. Rather, in order to decide this case, it is sufficient to follow the admonition in *Arbor Hill* to "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." 522 F.3d at 190.

### 1. *Customary Billing Rates*

 The first such factor is the range of rates that plaintiff's counsel actually charge their clients. This is obviously strong evidence of what the market will bear. *See People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir.1996); *Black Grievance Committee v. Philadelphia Electric Co.*, 802 F.2d 648, 652 (3d Cir.1986); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir.1986); *Norwest Financial, Inc. v. Fernandez*, 121 F.Supp.2d 258, 262–63 (S.D.N.Y.2000); *Reiter*, 2007 WL 2775144, at *5. Initially, plaintiff's counsel simply represented that the rates they were seeking were the rates that their clients are willing to pay and do pay. (Peratis 2/8/08 Decl., ¶¶ 32, 46, 58, 68, 78, 87). When this was challenged by defendants' counsel, plaintiff's counsel submitted eleven current retainer agreements. These documents demonstrate that clients of Outten & Golden have agreed to compensate the firm at the rate of $675 per

hour for Ms. Peratis' time, between $375 and $625 per hour for counsel, between $215 and $425 per hour for associates, $195 for law clerks, and between $140 and $160 for paralegals. (Peratis 3/28/08 Decl., Exhs. 3A through 3K). Generally, current rather than historic rates should be utilized to account for the delay between the date services were rendered and when fees can be recovered. *See Jenkins*, 491 U.S. at 283–84, 109 S.Ct. 2463; *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998); *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir.1998). Thus, the evidence of fees actually charged supports the rates requested by plaintiff's counsel.

### 2. *Experience of Counsel*

So, too, does their experience. Outten & Golden enjoys a reputation as one of the outstanding firms representing plaintiffs in employment cases. The individual attorneys who worked on this case each have qualifications and experience commensurate with the rates they charge. Kathleen Peratis has been a partner at Outten & Golden since 2001 and is head of its Sexual Harassment Group. Prior to that, she had been a named partner in two other firms specializing in employment-related matters. From 1974 to 1978, she was the director of the Women's Rights Project at the American Civil Liberties Union where she succeeded Justice Ruth Bader Ginsburg. (Peratis 2/8/08 Decl., ¶¶ 22–26 & Exh. H). Lewis Steel, who is of counsel to Outten & Golden, was an attorney with the National Association for the Advancement of Colored People from 1964 to 1968. Thereafter, he practiced civil rights law and litigated employment discrimination cases at a number of small firms before joining Outten & Golden in 2004. (Peratis 2/8/08 Decl., ¶¶ 70–75 & Exh. L). Mark Humowiecki is a 2001 graduate of Yale Law School whose experience includes a district court clerkship and a Skadden Fellowship in which he represented indigent clients in employment-related matters. He became an associate at Outten & Golden in 2004. (Perat is 2/8/08 Decl., ¶¶ 37–43 & Exh. I). Carmen P. Malalis graduated in 2001 from Northeastern University School of Law and then clerked for the Honorable Ronald L. Ellis in this Court. Following her clerkship, she worked for Sullivan & Cromwell LLP for two years before joining Outten & Golden. (Peratis 2/8/08 Decl., ¶¶ 49–55 & Exh. J). Ossai Miazad received her J.D. degree from American University's Washington College of Law in 2004 and spent the next year as a fellow in the Employment Discrimination Project of the Lawyers' Committee for Civil Rights Under Law. After working on employment matters at another firm for the next two years, she joined Outten & Golden in 2007. (Peratis 2/8/08 Decl., ¶¶ 61–65 & Exh. K). Tara Lai Quinlan graduated from Northeastern University School of Law in 2004 and then served as a law clerk in the Staff Attorney's Office for the United States Court of Appeals for the Second Circuit before becoming an associate at Outten & Golden in 2006. (Peratis 2/8/08 Decl., ¶¶ 80–84 & Exh. M).

### 3. *Other Evidence of Rates*

Evidence of rates charged in this district may be gleaned from several additional sources. First, plaintiff's counsel have submitted the affidavits of two other attorneys experienced in employment law but not affiliated with Outten & Golden who attest that the rates sought are similar to their own rates and within the range typically charged by attorneys in this field with comparable experience. (Declaration of Laura B. Hoguet dated Feb. 4, 2008, attached as Exh. 1 to Peratis 2/8/08 Decl.; Affirmation of Robert Herbst dated Feb. 4, 2008, attached as Exh. 2 to Peratis 2/8/08 Decl.).

In response, defendants' lead counsel, Michael Weber, notes that his billing rate

as of November 2007 when this case settled was $510 per hour, significantly less than the rate sought by Ms. Peratis. (Weber Decl., ¶ 26). Mr. Weber is indeed highly qualified. (Weber Decl., Exh. 17). But while the rate that he charges is relevant evidence, it is not compelling. There has been no showing that rates for lawyers who represent employees in discrimination cases are generally commensurate with the rates charged by the lawyers who represent employers.

More persuasive, however, is the defendants' argument that courts in this district have not awarded rates as high as those sought here. In 2006, Ms. Peratis was awarded fees at a rate of $500 for work done over the proceeding six years. *See Watson v. E.S. Sutton, Inc.,* 02 Civ. 2739, slip op. at 9–10 (S.D.N.Y. Aug. 11, 2006), *aff'd,* 2007 WL 2245432 (S.D.N.Y. Aug.3, 2007). Two years earlier, another Outten & Golden partner was awarded fees at a rate of $400 per hour. *See Ansoumana v. Gristede's Operating Corp.,* No. 00 Civ. 253, 2004 WL 504319, at *3 (S.D.N.Y. Jan. 7, 2004). In 2003, that same partner received an award at a rate of $425 per hour in a class action, while co-counsel whose experience was similar to Ms. Peratis' received $500 per hour. *See Mitchell v. Metropolitan Life Insurance Co.,* No. 01 Civ. 2112, slip. op. at 3 & Exh. A (S.D.N.Y. Nov. 6, 2003).[2] In *Reiter,* the court surveyed cases awarding fees to even highly experienced counsel in smaller firms and found that the rates generally ranged from $250 to $425 per hour. 2007 WL 2775144, at *7. These cases, then, militate in favor of some reduction to the requested rates. The rates previously awarded should not necessarily be considered a cap, however, since the rates charged by attorneys have generally increased since these cases were decided, though it is unclear by what degree.

### 4. Complexity of the Case

Finally, the relatively straightforward nature of this case also warrants some reduction in the rates. This was essentially a single plaintiff sexual harassment and retaliation case, complicated by the computer "hacking" issue and by the extent of conflict between opposing counsel. It did not involve multiple parties, class allegations, unique claims, or other characteristics that would tend to require counsel to charge premium rates in order to take the case on.

### 5. Rates Awarded

Based on all of these factors, a reasonable rate for partners and counsel (Ms. Peratis and Mr. Steel) is $600; for senior associates (Mr. Humowiecki and Ms. Malalis), $350; for junior associates (Ms. Miazad and Ms. Quinlan), $250; for law clerks, $175; and for paralegals, $125. This results in the following fee award:

| Status | Hours | Rates | Total |
| --- | --- | --- | --- |
| Partners | 697.55 | $600 | $ 418,530 |
| Sr. Associates | 1,243.30 | $350 | $ 435,155 |
| Jr. Associates | 265.98 | $250 | $ 66,495 |
| Law Clerks | 248.73 | $175 | $ 43,528 |
| Paralegals | 714.66 | $125 | $ 89,333 |

*Grand Total:* $1,053,041

No further adjustments to this presumptively reasonable figure are warranted.

2. In a case decided after the parties briefed this motion, Outten & Golden sought fees for Ms. Peratis at a rate of $450 per hour and for Mr. Humowiecki and Ms. Malalis at $325 per hour. The court reduced the rates, awarding $300 per hour for Ms. Peratis and $225 for Mr. Humowiecki and Ms. Malalis. *Lochren v. County of Suffolk,* No. CV 01–3925, 2008 WL 2039458, at *4–5 (E.D.N.Y. May 9, 2008). This decision is of limited value here, however, because the court specifically based its determination on the market for legal services in the Eastern District of New York. *Id.*

## D. Costs

Plaintiff's counsel have requested reimbursement for costs as follows:

| Category | Initial Application | Supplemental Application |
|---|---|---|
| Witness Fees | $ 535.80 | |
| Subpoenas | $ 153.80 | |
| Research | $ 1,431.58 | $ 850.42 |
| Document Retrieval & Process Server | $ 1,314.29 | |
| Court Reporters | $16,602.97 | $ 55.80 |
| Consultant/Expert | $ 3,869.61 | |
| Medical Record Fees | $ 646.50 | |
| Messenger | $ 715.75 | $ 14.15 |
| Court Fees | $ 292.30 | |
| Document Management | $ 249.26 | |
| Copy or Police Record & Transcripts | $ 100.00 | |
| Facsimiles | $ 403.50 | |
| FedEx | $ 451.49 | |
| Postage | $ 56.01 | |
| Phone | $ 14.70 | |
| Velobinding | $ 25.50 | |
| Photocopies | $ 4,140.85 | $ 137.50 |
| Travel | $ 1,085.38 | $ 96.00 |
| Meals | $ 905.92 | $ 126.04 |
| Total | $32,995.21 | $ 1,279.91 |

*Grand Total:* $34,275.12

(Peratis 2/8/08 Decl., ¶ 20 & Exh. G; Peratis 3/28/08 Decl., ¶ 44 & Exh. 12).

The defendants challenge these costs on three grounds. First, they argue that plaintiff's counsel failed to document their expenditures and should therefore be denied reimbursement altogether. However, plaintiff's counsel remedied this in their reply papers, supplying detailed invoices and other documentation. (Peratis 3/28/08 Decl., ¶ 21 & Exhs. 6-A through 6-G).

Second, the defendants contend that meals and charges for computerized legal research are not compensable. Meals are not generally a recoverable cost, *see Pappas v. Watson Wyatt & Co.,* No. 3:04CV304, 2008 WL 45385, at *9 n. 3

(D.Conn. Jan. 2, 2008), at least where they are not attributable to out-of-town discovery, and the retainer agreements of plaintiff's counsel do not suggest that they normally recover such costs from their clients. (Peratis 3/28/08 Decl., Exhs. 3-A through 3-K). Therefore, the charges for meals will be disallowed. Courts in this district are split on whether the cost of computerized legal research is compensable. *See BD,* 177 F.Supp.2d at 209 (collecting cases demonstrating division in authority but denying recovery). I am persuaded by the reasoning of the court in *Gonzalez v. Bratton,* 147 F.Supp.2d 180, 212 (S.D.N.Y. 2001), and find that such expenses are recoverable as a component of attorneys' fees, at least where it is clear that counsel regularly charge paying clients separately for them. That is the case here; computerized legal research is specifically identified in Outten & Golden's retainer agreements as an expense that will be billed to the client. (Peratis 3/28/08 Decl., Exhs. 3-A through 3-K).

Third, the defendants complain that Outten & Golden has not established that the requested costs are the type of expenses that the firm ordinarily charges to its clients. The retainer agreements, however, show that, except for meals, Outten & Golden does charge its clients separately for the types of expenses for which reimbursement is sought here.

Accordingly, with the exception of the cost of meals, plaintiffs' counsel are entitled to reimbursement of the costs they have itemized. These come to a total of $33,243.16.

## E. Interest

The defendants initially objected to any award of interest on attorneys' fees, since the use of current rather than historical hourly rates already accounts for the delay between the date that any work was performed and the date of judgment.

548

However, plaintiff's counsel made clear that they seek interest only on the award of costs. (Peratis 2/8/08 Decl., ¶ 89). This is appropriate, since counsel have been out-of-pocket for those costs for a substantial period of time. If counsel are unable to agree on an appropriate interest award, they shall submit their respective positions to the Court within ten days of the date of this Order for final determination.

*Conclusion*

For the reasons set forth above, plaintiff's application for an award of attorneys' fees and costs is granted to the extent that defendants shall pay $1,053,041.00 in attorneys' fees, $33,243.16 in costs, and interest on costs in an amount to be determined.

SO ORDERED.